**T. J. ALLNEW, individually and a member of the class, tenants of the San Marco Apartments, Duluth, Minnesota, Plaintiff,**

v.

**CITY OF DULUTH, Jim Mlodozyniec, individually and as a Duluth Housing Inspector, David Mattson, individually and as a Duluth Fire Marshal, Joe Helstrom, Jack Ball, Lynn Beechler, James Berry, Duane Flynn, Joe Johnson, David Krech, Ed Shamblott, Clair Strandlie, Dick Whitney, and Jerry Thompson, individually and as members of the Duluth Board of Appeals, Defendants.**

Civ. No. 97–187 (MJD/RLE).

United States District Court,
D. Minnesota,
Fifth Division.

June 2, 1997.

T.J. Allnew, Duluth, MN, pro se.

Mary Alison Lutterman, Duluth City Atty., Duluth, MN, for Defendants.

ORDER

DAVIS, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Ray-

mond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

1. That the Plaintiff's original Motion for a Temporary Restraining Order [Docket No. 3] shall be, and hereby is, denied.

2. That the Plaintiff's supplemental Motion for a Temporary Restraining Order [Docket No. 12] shall be, and hereby is, denied.

3. That the Plaintiff's Motion for Class Certification [Docket No. 13] shall be, and hereby is, denied.

ORDER

and

REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

March 17, 1997.

I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the following Motions:

1. The Plaintiff's original and supplemental Motion for a Temporary Restraining Order;

2. The Plaintiff's Motion for class certification; and

3. The Plaintiff's Motion to Strike.[1]

A Hearing on the Motions was conducted on March 10, 1997, at which time the Plaintiff appeared *pro se, in forma pauperis,* and the

Defendants appeared by M. Alison Lutterman, Assistant Duluth City Attorney.[2]

For reasons which follow, the Motion to Strike is denied, and we recommend that the remaining Motions be denied.

II. *Factual and Procedural History*

The Plaintiff resides in an apartment which is located at 224 West Third Street, in Duluth, Minnesota, and which is included within a three building complex that is known as the "San Marco Apartments." The San Marco Apartments are owned by Roy M. Anderson ("Anderson"), and his wife Mary, who operate the facility as a multi-unit rental apartment complex. The Plaintiff is one of an unspecified number of tenants who, as of the date of this Report, continue to reside in the San Marco Apartments.

In accordance with the requirements of the Duluth City Housing Code, all multiple dwelling apartment buildings are to be operated under a three-year license. See, *Duluth City Code § 29A–28.* With respect to their operation of the San Marco Apartments, the Andersons' multiple dwelling license expired on December 1, 1994, and accordingly, they sought to renew their license. *Affidavit of James Mlodozyniec, Exhibit 4.* On April 25, 1995, as a precondition to the renewal of that license, a City Housing Inspector conducted a licensing inspection of the complex, and uncovered over 50 violations of the City Housing Code. *Id., Exhibit 1.* By a Notice dated May 9, 1995, the Inspector advised the Andersons of the violations, and he instructed that the violations should be remedied within 30 days. *Id.*

On March 7, 1996, three City officials conducted a reinspection of the property, in order to determine if the earlier violations had been corrected.[3] *Id., Exhibit 3.* The

---

[1]. Also before us is the Plaintiff's Motion for the issuance of a Protective Order, which would prohibit the individual Defendants from directly communicating with him, or with any of the other tenants at the San Marco Apartments. We can conceive of no legal basis for entering such an Order, and the Plaintiff has drawn no authorities to our attention which commend the issuance of any such Order. Therefore, finding no responsible basis upon which to grant a Protective Order, we deny the Motion.

[2]. The Defendant Jerry Thompson has not entered an appearance in this action since, as of the date of the Hearing, he had not been served with a Summons and Complaint.

[3]. Two of these officials—namely, Duluth Fire Marshal Dave Mattson and Lead Housing Inspector Jim Mlodozyniec—are Defendants in this action. The remaining official—Building Inspection Staff Person Sue Hiller—is not a party to this action. See, *Affidavit of James Mlodozyniec, Exhibit 3.*

reinspection disclosed that the former violations had not been remedied, and it revealed the presence of over 20 additional violations of the City's Housing and Fire Codes, including the absence from the complex of any fire alarm system that conformed with the requisites of State law. *Id.* By Notice dated March 12, 1996, the officials advised the Andersons of the existence of these violations, and directed that these additional violations be corrected within 30 days. *Id.*

The Andersons appealed the Notice of Violations of March 12, 1996, to the Duluth Building Appeal Board.[4] At its regular meeting of July 10, 1996, the Board considered the Andersons' appeal. *Affidavit of James Mlodozyniec, Exhibit 5.* Anderson and the Plaintiff appeared at this meeting but, because of a conflicting appointment, they had to depart before the Board considered the Andersons' appeal. As a consequence, Anderson submitted a written statement to the Board. After receiving oral statements from the Defendants Dave Mattson ("Mattson"), and Jim Mlodozyniec ("Mlodozyniec"), the Board denied the Andersons' appeal by a unanimous vote, and recommended that the San Marco Apartments be condemned, both as being unfit for human habitation, and as being suitable for demolition. *Id.*

As a result of the Board's recommendation, on July 19, 1996, the Defendant Jerry Thompson ("Thompson"), who was then the City's Building Official, issued an Order which condemned the complex as being unfit for human habitation, and which directed that the complex was to be vacated within 30

days.[5] *Affidavit of James Mlodozyniec, Exhibit 6.* The Andersons appealed these directives and, on August 14, 1996, Anderson wrote to Thompson requesting an extension of 30 days in the deadline to vacate the complex's tenants. In making this request, Anderson gave Thompson "[his] word as a gentleman that [he] would do everything possible to obtain a housing license within that thirty-day period * * *." See, *Exhibits to Plaintiff's Motion for Temporary Restraining Order, (August 14, 1996 Letter from Roy Anderson to Jerry Thompson).* Based upon this assurance, Thompson granted an extension until September 23, 1996, by which time the complex was either to be licensed by the City's Building Inspection Department, or be vacated of its inhabitants. *Affidavit of James Mlodozyniec, Exhibit 7.*

Notwithstanding the assurance given, on September 30, 1996, the San Marco Apartment complex was neither vacated nor licensed as a multiple dwelling. As a consequence, on that date, Mlodozyniec cited Anderson with the following violations of the Duluth City Code:

1. Failing to vacate tenants from a property which is condemned for human habitation, see, *Duluth City Code § 29A–14(b) and (c);*

2. Operating an unlicensed rental unit, see, *Duluth City Code § 29A–33;*

3. Failure to correct cited violations of the Housing and Fire Codes, see, *Duluth City Code § 29A–8(a), (d) and (f), § 29A–7(c), and Uniform Fire Code § 12.106(A, B, and C), and Appendix 1–A;* and

4. The Duluth Building Appeal Board consists of 12 members, who serve without compensation, and who are appointed by the City's Mayor, subject to the approval of the City Council. See, *Duluth City Code § 10–5(a).* Both the Duluth Fire Chief and the Duluth Building Official sit as *ex officio* members of the Board, and the remaining members are to include an architect, a financing professional, a building construction engineer, a residential contractor, a commercial building contractor, a building materials supply professional, a building trade union member, and a realtor. *Id.* Among its responsibilities, the Board has jurisdiction to hear appeals from the decisions of the City's building and fire inspection officials, which relate to the enforcement, or to the interpretation of the State and City Housing and Fire Codes. *Duluth City Code*

§ 10–5(c). Any person who is aggrieved by a decision of the Board, which involves a Duluth Housing Code matter, may appeal the decision to the Duluth City Council, by filing a Notice of Appeal, with the Building Official, within 15 days after having received notice of the Board's decision. *Duluth City Code § 10–5(f).*

5. Despite the recommendation of the Board, Thompson declined to order the San Marco Apartments condemned for demolition, because he concluded that the complex was structurally sound, and did not warrant destructive condemnation. See, *Exhibits to Plaintiff's Motion for Temporary Restraining Order, (August 12, 1996 Letter from Jerry Thompson to Roy and Mary Anderson).*

4. Performing plumbing work without a permit. See, *Duluth City Code § 10–32.*

*Affidavit of M. Alison Lutterman, Exhibits 1, 2, and 3; Exhibits to Plaintiff's Motion for Temporary Restraining Order, (Ticket No. 2584).*

In addition, on that same date, Mattson cited Anderson for installing an unapproved fire alarm system at the San Marco Apartments, without a permit, in violation of Uniform Fire Code § 14.104(g). *Affidavit of M. Alison Lutterman, Exhibit 5.* However, because the Andersons had appealed the earlier condemnation Order, the City subsequently dismissed the citation attributable to the Andersons having failed to vacate the apartment complex. *Id., Exhibit 6.* At the time of the Hearing in this matter, counsel for the Defendants advised that Anderson was scheduled to be arraigned, on March 14, 1997, for the remaining violations.

On November 7, 1996, and at the Andersons' request, the Office of the State Fire Marshal inspected the fire alarm system that the Andersons had installed in the apartment complex. *Affidavit of James Mlodozyniec, Exhibit 8.* This inspection revealed several shortcomings in the alarm system and, as a consequence, the State Fire Marshal refused to approve the system. *Id., Exhibit 9.* The parties have advised that the decision of the State Fire Marshal is currently on appeal to the State Department of Public Safety.

On December 11, 1996, the Building Appeal Board considered, and denied, the Andersons' appeal of the Order which condemned the San Marco Apartments as being unfit for human habitation. *Id., Exhibit 10.* The Andersons did not appeal this decision to the Duluth City Council, *id., Exhibit 11,* and, on or about February 1, 1997, the City posted several placards on the building complex which read as follows:

NO TRESPASSING. THIS BUILDING IS CONDEMNED AS UNFIT FOR HUMAN HABITATION BY THE BUILDING INSPECTION DIVISION.

*February 10, 1997 Affidavit of T.J. Allnew, Exhibit B.*

On or about this same date, Mlodozyniec attempted to deliver to each tenant of the complex, by certified mail, a notification that the complex had been condemned, and that any tenant found within the building on or after February 28, 1997, would be served with a citation, presumably for trespassing.[6] See, *Exhibits to February 11, 1997 Affidavit of T.J. Allnew.*

At the Hearing in this matter, counsel for the Defendants confirmed that the tenants, who were still residing at the San Marco Apartments, could be cited for trespassing, but counsel expressly represented that the City would not take any action against the tenants until the State Department of Public Safety should rule upon the Andersons' request for an approval of the complex's fire alarm system. Further, counsel advised that the City regards the lack of an approved fire alarm system as the most serious Code violation at the San Marco Apartments, and that the City would withdraw the condemnation Order if the Andersons obtained State approval of their current alarm system.

On January 22, 1997, the Plaintiff commenced this putative class action, by the filing of a Complaint which he subsequently amended on January 30, 1997. In his Amended Complaint, the Plaintiff alleges that the Duluth Housing and Fire Codes are unconstitutional both facially, and as applied, and he accuses the Defendants of enforcing these Codes in a manner which illegally discriminates against the residents of the San Marco Apartments because of their assertedly disadvantaged socioeconomic status. In addition, the Plaintiff contends that, by their actions, the Defendants in general, and Mattson and Mlodozyniec in particular, have maliciously prosecuted the Andersons.

As noted, the Plaintiff moves to certify a class of Plaintiffs, and he seeks temporary injunctive relief. See, *Rule 65(b), Federal Rules of Civil Procedure.* As first submitted, the Plaintiff sought a Temporary Restraining Order which would preclude the

---

**6.** The United States Postal Service did not deliver the certified letters to the tenants, because they had not been addressed to each of the tenants by name. See, *February 10, 1997 Affidavit of T.J. Allnew, Exhibit C.*

City from criminally prosecuting Anderson for the Code violations which were issued against him on September 30, 1996. Subsequently, he supplemented his request for injunctive relief, by urging that an injunction issue which would temporarily preclude the City from evicting him, or any of the other tenants of the San Marco Apartments. Lastly, the Plaintiff moves to strike those references in the Defendants' Memorandum, which address his disbarment from the practice of law in 1981, as gratuitously sullying his good name, and his competence to adequately and fairly represent the class. See, *Rule 11(c)(1)(A), Federal Rules of Civil Procedure.*

### III. *Discussion*

#### A. *The Plaintiff's Motion for Class Certification.*

The Plaintiff seeks to certify a class consisting of "those tenants who live or have lived at the San Marco Apartments at or about July 10, 1996, when Defendants arbitrarily, wrongfully and maliciously * * * condemned said building." In opposition to the Motion, the Defendants maintain that, as a *pro se* litigant, the Plaintiff is incapable of fairly and adequately protecting the interests of the putative class members.[7] See, *Rule 23(a)(4), Federal Rules of Civil Procedure.*

 1. *Standard of Review.* As here pertinent, Rule 23(a), Federal Rules of Civil Procedure, provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if * * * (4) the representative parties will fairly and adequately protect the interests of the class.

Given this directive, when faced with a Motion for class certification, "[t]he district court is under an obligation 'to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *Bishop v. Committee on Professional Ethics, Etc.,* 686 F.2d 1278, 1288

(8th Cir.1982), quoting *General Telephone Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Indeed, " '[t]he adequacy of the representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a) (4) prerequisite in every case.' " *Bishop v. Committee on Professional Ethics, Etc.,* supra at 1288, quoting *Vervaecke v. Chiles, Heider & Co.,* 578 F.2d 713, 719 (8th Cir.1978), quoting in turn, *C. Wright & A. Miller, Federal Practice and Procedure § 1765,* at 616–17 (1972). Thus, "[the] named plaintiff has the burden of establishing that a case is certifiable as a class action and that, as the class representative, the named plaintiff meets all the Rule 23(a) requirements." *Bishop v. Committee on Professional Ethics, Etc.,* supra.

In conducting the Rule 23(a)(4) inquiry, the Courts have widely held that a class representative cannot properly appear *pro se.* See, e.g., *Covington v. Allsbrook,* 636 F.2d 63, 64 (4th Cir.1980), cert. denied, 451 U.S. 914, 101 S.Ct. 1990, 68 L.Ed.2d 305 (1981); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir.1975); *Davidson v. Coughlin,* 920 F.Supp. 305, 311 (E.D.N.Y.1996); *Woods v. Evatt,* 876 F.Supp. 756, 773 (D.S.C.1995), aff'd, 68 F.3d 463 (4th Cir.1995) (Table); *Lasley v. Godinez,* 833 F.Supp. 714, 715 n. 1 (N.D.Ill.1993); *Caputo v. Fauver,* 800 F.Supp. 168, 170 (D.N.J.1992), aff'd, 995 F.2d 216 (3rd Cir.1993) (Table); *Avery v. Powell,* 695 F.Supp. 632, 643 (D.N.H.1988); *Davis v. City of Portsmouth,* 579 F.Supp. 1205, 1208 (E.D.Va.1983), aff'd, 742 F.2d 1448 (4th Cir. 1984) (Table); *Allen v. Brodie,* 573 F.Supp. 87, 89 (D.Md.1983), appeal dismissed by 729 F.2d 1451 (4th Cir.1984) (Table); *Ethnic Awareness Org. v. Gagnon,* 568 F.Supp. 1186, 1187 (E.D.Wis.1983); *Gray v. Levine,* 455 F.Supp. 267, 268 (D.Md.1978), aff'd, 605 F.2d 1201 (4th Cir.1979) (Table); *Martin v.*

---

7. Since the Plaintiff's Motion for class certification has not been properly noticed for a Hearing, the Defendants have limited their objection in proceeding as a class action, to the threshold issue of whether the Plaintiff can properly be a representative party. Accordingly, we have no occasion to address the other prerequisites to a class action such as those relating to numerosity and typicality. See, *Rule 23(a), Federal Rules of Civil Procedure.* In addressing this aspect of the Motion for class certification, we understand that the Defendants are preserving their right to object to a class proceeding, on other grounds, when the Motion has been properly noticed.

*Middendorf,* 420 F.Supp. 779, 781 (D.D.C. 1976).

In the words of one Court, which has considered the issue closely:

> Ability to protect the interests of the class depends in part on the quality of counsel, * * * and we consider the competence of a layman representing others to be clearly too limited to risk the rights of others.

*Oxendine v. Williams,* supra at 1407 [internal citation omitted]. For its part, our Court of Appeals has not categorically stated that a *pro se* litigant can never serve as a class representative, but it has confirmed that "[t]he focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class *through qualified counsel." Paxton v. Union National Bank,* 688 F.2d 552, 562–63 (8th Cir.1982), cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983) [emphasis supplied]; see also, *Dirks v. Clayton Brokerage Co. of St. Louis Inc.,* 105 F.R.D. 125, 133 (D.Minn.1985) (Rule 23(a)(4) inquiry "entails the concern over whether the class representatives and their counsel will competently and vigorously pursue the lawsuit * * *").

■ 2. *Legal Analysis.* With these precepts as our guide, we conclude that the Plaintiff's Motion for Class Certification should be denied, since he has failed to demonstrate that he is capable of fairly and adequately protecting the interests of the putative class, in his present *pro se* status. To this extent, we join those Courts which have determined that the rights and interests of potential class members are of too critical importance to be entrusted to a litigant who is not ably assisted by fully competent legal counsel. While one may elect to risk his or her own rights and interests by self-representation, jeopardizing the rights of all who may fall within the putative class is a far more daunting consideration. See, e.g., *Covington v. Allsbrook,* supra at 64; *Oxendine v. Williams,* supra at 1407; *Lasley v. Godinez,* supra at 715 n. 1; *Davis v. City of Portsmouth,* supra at 1208.

Of course, we recognize "that each *pro se* plaintiff presents a different case and possesses a different level of proficiency." *Martin v. Middendorf,* supra at 781. Here, we have not overlooked the fact that the Plaintiff has a law school degree and that, formerly, the Plaintiff served as an attorney who was duly licensed under the laws of Minnesota. In 1981, however, the Plaintiff was barred from the practice of law in this State, under circumstances which, though dated, seriously undermine our confidence in his capacity to fairly and adequately protect the legal rights of others. See, *Matter of Discipline of Agnew,* 311 N.W.2d 869 (Minn.1981).[8] In disbarring the Plaintiff, the Minnesota Supreme Court was uncompromisingly direct in finding that he had, in one specific instance, "engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, advanced unwarranted claims without good faith arguments, and created affidavits known to be false." *Id.* at 872. As a general overview, the Court observed that the Plaintiff had, "in the course of his legal practice[,] caused unnecessary expense and annoyance to the courts, his fellow attorneys, and his own clients." *Matter of Discipline of Agnew,* supra at 869. After a lengthy recitation of the Plaintiff's professional delinquencies, the Court concluded that the Plaintiff's course of conduct evidenced "not only an ethical dereliction on the part of [the Plaintiff] but also a deficiency in professional judgment and competence." *Id.* at 872.[9]

---

8. The Record before us establishes that, on February 14, 1994, the Plaintiff changed his legal name from "Thomas Joseph Agnew" to "Thomas Joseph Allnew." See, *Affidavit of M. Alison Lutterman, Exhibit 8.* The Plaintiff does not dispute that he is the "Thomas Joseph Agnew" who was barred, in 1981, by the Minnesota Supreme Court, from any continued practice of law which involves the representation of others.

9. We understand that the Plaintiff takes strong exception to the legal and factual analyses which prompted his removal from the practice of law. We also recognize that, philosophically, the Plaintiff regards the State's licensing requirements to be inimical to his postulation of a citizen's freedom to do as he or she should please. Notwithstanding the Plaintiff's personal political tenets, we are not at liberty, as the Plaintiff here suggests, to ignore final adjudica-

In view of the Record before us, even if we were to depart from the preponderance of authority, which disdains the adequacy of *pro se* litigants to fairly represent a class, we would, nonetheless, find the Plaintiff to be unacceptable in his capacity to properly advance the interests of the putative class members. Accordingly, we recommend that the Plaintiff's Motion for class certification be denied.[10]

### B. *The Plaintiff's Motion for a Temporary Restraining Order.*

As we have observed, the Plaintiff's injunctive requests are two-fold. He seeks to thwart any prospective criminal prosecution of Anderson, which could arise from the citations that were issued to Anderson on September 30, 1996, and he asks that the Defendants be enjoined from evicting either him, or any other tenant of the San Marco Apartments, because of the pending Fire and Building Code violations that the owners of the complex have received. In each respect, we conclude that the Plaintiff lacks the required standing to obtain the relief he requests.

■ 1. *Standard of Review.* Article III of the United States Constitution restricts Federal Courts to the adjudication of actual "cases" and "controversies." The principle of "standing" is among several doctrines—such as ripeness, mootness, and the involvement of a political question—which have developed to inform and define the "case or

tions which directly address his inability to adequately and fairly represent the legal interests of persons other than himself. Accordingly, we deny his Motion to Strike the Defendants' reference to his disbarment proceedings.

While, at first blush, we could accept that, with the passage of time, the Plaintiff's appreciation for his ethical obligations might well have improved, we see little evidence of improvement here. As revealed by our independent review, in early 1988, a Minnesota District Court Judge issued a Temporary Restraining Order which enjoined both the Plaintiff and Anderson from any contact with a woman who had apparently been lavished, by each of them, with flowers and letters at her workplace. The woman had complained, but the Plaintiff and Anderson persisted. *Agnew v. Campbell,* 1990 WL 188723 *1 (Minn. App., December 4, 1990), rev. denied (Minn., January 24, 1991). Thereafter, in September of 1988, the Plaintiff petitioned the same District Court Judge to enjoin the woman's then impending marriage, and argued that, by issuing the Temporary Restraining Order pursuant to the Minnesota domestic abuse statute, the Judge had given *de facto* recognition to a marriage between the woman and Anderson. *Id.* In addition, the Plaintiff requested the Judge to order the woman and Anderson to undergo marriage counseling, and he wrote to the clergyman, who was to perform the woman's marriage ceremony, and informed him that the proposed marriage was illegal because the woman was already married to Anderson. *Id.*

Finding the Plaintiff's Motion to be frivolous, and to constitute yet another form of harassment of the woman, in violation of the prior Restraining Order, the District Court Judge extended the prohibitions of that Restraining Order, and awarded the woman $2,000 in attorneys' fees as a sanction against the Plaintiff and Anderson. *Id.* In addition, the District Court Judge considered a letter from a psychiatrist, which had been submitted by the woman so abused, and determined that the letter presented a particularized showing that the Plaintiff was mentally ill, and that he posed a potential endangerment to her. As a consequence, the Judge ordered the Plaintiff to be apprehended and be held for a psychiatric evaluation. *Id.*

The Plaintiff then commenced a tort action against the Judge, in a Minnesota District Court, asserting claims of false imprisonment, and of filing a "false" petition for commitment. *Id.* In due course, the Minnesota District Court granted the Judge's Motion for Summary Judgment on all claims and, on the Plaintiff's appeal to the Minnesota Court of Appeals, the District Court's judgment was affirmed in all respects, and the Minnesota Supreme Court rejected the Plaintiff's petition for further review. *Id.* at *1–2.

In our considered view, this more recent recitation of the Plaintiff's deportment in the legal process gives us further pause by persuasively corroborating the Minnesota Supreme Court's earlier disapprobation which led to the Plaintiff's removal from the practicing bar. Given the apparent invariability of the Plaintiff's comportment, inclusive of certain of his averments to this Court, we have no responsible basis upon which to conclude that he is presently capable of adequately and fairly representing the interests of the class he proposes to certify.

10. We are mindful of the Plaintiff's argument that, in seeking to represent the class, he does not intend to practice law, but merely seeks to serve as the bellwether for a group of similarly situated litigants. We see this as a distinction without a difference. So long as the collective interests of the litigants will rise or fall on the Plaintiff's competency to fairly and adequately represent their mutual concerns, he unavoidably assumes their legal representation—a result that we cannot ignore.

controversy" requirement. See, *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The standing inquiry focuses upon "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Expressed somewhat more fully, "the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, supra at 498–99, 95 S.Ct. at 2205, quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) [emphasis in original].

■ At its core, the standing requirement contains three constitutional elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, * * * and (b) "actual or imminent not 'conjectural' or 'hypothetical,'" * * *. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly * * * trace[able] to the challenged action of the defendant, and not * * * th[e] result [of] the independent action of some third party not before the court." * * * Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The plaintiff bears the burden of establishing each of these three elements. *Id.* at 561, 112 S.Ct. at 2136; see also, *Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir. 1995), cert. denied, —— U.S. ——, 116 S.Ct. 1266, 134 L.Ed.2d 214 (1996); *Schanou v. Lancaster County School Dist. No. 160*, 62 F.3d 1040, 1045 (8th Cir.1995); *Burton v. Central Interstate LLRWC Commission*, 23 F.3d 208, 209 (8th Cir.1994), cert. denied, 513 U.S. 951, 115 S.Ct. 366, 130 L.Ed.2d 318 (1994).

■ In addition to these constitutional requirements, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge College v. Americans United*, 454 U.S. 464, 474, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). First, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claims to relief on the legal rights or interests of third parties." *Warth v. Seldin*, supra at 499, 95 S.Ct. at 2205. The Supreme Court has acknowledged, however, the propriety of allowing a litigant to bring an action, on behalf of a third party, when the following three criteria are satisfied:

1. The litigant must have suffered an "injury in fact," thus providing him with a "sufficiently concrete interest" in the outcome of the issue in dispute;

2. The litigant must have a close relation to the third party; and

3. There must exist some hindrance to the third party's ability to protect his or her own interest.

*Powers v. Ohio*, 499 U.S. 400, 410–11, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991). Second, even when the plaintiff has alleged a redressable injury which is sufficient to meet the requirements of Article III, the Federal Courts will not adjudicate "'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge College v. Americans United*, supra at 474–75, 102 S.Ct. at 760, quoting *Warth v. Seldin*, supra at 499–500, 95 S.Ct. at 2205–06. Finally, the plaintiff's claim must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge College v. Americans United*, supra at 475, 102 S.Ct. at 760, quoting *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970).

■ 2. *Legal Analysis.* As noted, prudential concerns dictate that, as a general proposition, a litigant may not advance the claims and interests of a third-party and, therefore, we need not dawdle over the Plaintiff's standing to advance the claims of either Anderson, or of the other tenants of

the San Marco Apartments, for he has failed to show that these third persons are hampered in their ability to protect their own interests.[11] *Powers v. Ohio*, supra at 411, 111 S.Ct. at 1370–71. For this reason alone, we conclude that the Plaintiff lacks the standing to raise the claims of the other tenants, or of Anderson, and his request for a Temporary Restraining Order, on their respective behalves, should be denied.[12]

▪▪▪ We also conclude that the Plaintiff lacks standing to obtain an injunction against his own eviction, since he has failed to satisfy the necessary "injury in fact" component of standing. This component demands that any claimed injury satisfy four separate showings. First, the injury must impact a "legally protected interest." *Lujan v. Defenders of Wildlife*, supra at 560, 112 S.Ct. at 2136. Second, the injury must be "particularized" to the Plaintiff; that is, it must affect the Plaintiff in a personal and individualized fashion. *Id.* at 561 n. 1, 112 S.Ct. at 2136 n. 1. Third, the injury must be likely to occur, rather than be speculative. *Id.* at 560–61, 112 S.Ct. at 2136–37; see also, *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). Lastly, the injury must be actual or imminent. *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722–23, 109 L.Ed.2d 135 (1990). In this respect, "[a] threatened injury must be certainly impending to constitute injury in fact." *Id.* at 158, 110 S.Ct. at 1724–25; see also, *Boyle v. Anderson*, supra at 1100; *Schanou v. Lancaster County School Dist. No. 160*, supra at 1044; *Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir.1994).

Here, the Plaintiff has alleged that the Defendants have violated his right to the equal protection of the laws, which clearly implicates a "legally protected interest." See, *Northeastern Fla. Contractors v. Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 2303, 124 L.Ed.2d 586 (1993). Since the continuity of the Plaintiff's residence is asserted to be at stake, we can also accept that the claimed injury is sufficiently "particularized," and is personal to him. Nevertheless, we are unable to conclude that the asserted injury is likely to occur, or that it is actual or imminent, given the Defendants' representation that they have no intention of evicting the Plaintiff—or any other tenant at the San Marco Apartments—until a final determination, on the Andersons' request for State approval of the fire alarm system they in-

---

**11.** Indeed, since the commencement of the Plaintiff's action, eight separate Complaints have been filed with the Court, each of which raises claims that are similar to those of the Plaintiff and, in each, the claimant purports to be a tenant in the San Marco Apartments. See, *Hogan v. City of Duluth*, Civil No. 97–573 (RHK/RLE); *Gorham v. City of Duluth*, Civil No. 97–517 (JRT/RLE); *Owens v. City of Duluth*, Civil No. 97–504; *Olson v. City of Duluth*, Civil No. 97–503 (JMR/RLE); *Goss v. City of Duluth*, Civil No. 97–487 (MJD/RLE); *Brooks v. City of Duluth*, Civil No. 97–486 (JMR/RLE); *Brown v. City of Duluth*, Civil No. 485 (MJD/RLE); *Wilson v. City of Duluth*, Civil No. 97–465 (MJD/RLE).

**12.** Furthermore, if counsel for the Defendants is correct in her assertion that, on March 14, 1997, Anderson was arraigned on the charges contained in the citations that he received on September 30, 1996, then we must refrain from enjoining his prosecution on those charges by virtue of the doctrine of abstention. It is axiomatic "that principles of equity, comity and federalism dictate that federal courts should generally refrain from enjoining ongoing state criminal proceedings, absent extraordinary circumstances where the danger of irreparable harm to the federal plaintiff is both great and immediate." *Anderson v. Schultz*, 871 F.2d 762, 764 (8th Cir.1989), citing *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). Where, as here, "the state criminal proceeding is begun after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court, the *Younger* doctrine applies in full force." *Anderson v. Schultz*, supra at 764–65, citing *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975).

Moreover, the threat of a single prosecution does not give rise to an irreparable injury which is sufficiently "great and immediate," so as to warrant a departure from the strictures of the *Younger* doctrine. *Younger v. Harris*, supra at 46, 91 S.Ct. at 751; *Anderson v. Schultz*, supra at 765. While a Federal plaintiff may be relieved from the *Younger* prohibition if he can demonstrate that he has no opportunity to raise his constitutional claims within the State criminal proceeding, or that the State prosecution has been motivated by bad faith or harassment, *Younger v. Harris*, supra at 49, 91 S.Ct. at 753, the Plaintiff has made no competent showing that either of these exceptions to the *Younger* doctrine would here apply so as to allow Anderson's criminal prosecution to be enjoined.

stalled, has been rendered.[13] In view of the substantial past and prospective delay before such a determination can be finalized—both administratively and through any judicial appeals—we see no prospect for the Plaintiff's imminent eviction.[14] As a consequence, we are unable to conclude that the Plaintiff's eviction, at the hands of the Defendants, is "certainly impending," and he has failed to demonstrate the requisite injury in fact that is essential in conferring the standing necessary to his securement of injunctive relief. *Whitmore v. Arkansas,* supra at 158, 110 S.Ct. at 1724–25; *Boyle v. Anderson,* supra at 1100; *Schanou v. Lancaster County School Dist. No. 160,* supra at 1044; *Sierra Club v. Robertson,* supra at 758.[15]

Accordingly, we recommend that the Plaintiff's Motion for injunctive relief be, in all respects, denied.[16]

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion for Protective Order [Docket No. 13] is DENIED.

2. That the Plaintiff's Rule 11 Motion to Strike [Docket No. 24] is DENIED.

AND, It is—

RECOMMENDED:

1. That the Plaintiff's original Motion for a Temporary Restraining Order [Docket No. 3] be denied.

2. That the Plaintiff's supplemental Motion for a Temporary Restraining Order [Docket No. 12] be denied.

3. That the Plaintiff's Motion for Class Certification [Docket No. 13] be denied.

---

13. We do not underestimate the considerable public interests that are promoted by a fair and effective enforcement of the applicable Building and Fire Codes, nor do we presume to have the requisite qualifications, or expertise, to address the pertinent factors which warrant the proscriptions of one Code provision or another. As we made clear at the Hearing in this matter, the Defendants' representation, that the tenants of the San Marco Apartments would not be evicted absent due notice to this Court, is without prejudice and, therefore, does not delimit, their public obligation and responsibility to take such emergent actions, for the protection of the health, safety and welfare of the tenants of that complex, as exigencies may require.

14. We also have substantial doubt that the Plaintiff can prove a causal connection between his asserted injury, and the conduct complained of, which is not directly traceable to the independent conduct of the Andersons. See, *Berry v. City of Little Rock,* 904 F.Supp. 940, 946–47 (E.D.Ark.1995), aff'd, 94 F.3d 648 (8th Cir.1996) (Table). In reality, whether the Plaintiff ultimately risks an eviction is directly dependent upon the Andersons' election to comply with the generally applicable Code provisions, or to litigate their challenge to those provisions, in their capacity as property owners, through all appropriate initial and appellate stages of the administrative and judicial processes, with all attendant costs and consequences. Stated otherwise, whatever "case" or "controversy" the Plaintiff may claim to have can be wholly eviscerated, at will, by the Andersons' decision to remedy the deficiencies with which they have been cited.

15. In this respect, we note that the "injury in fact" requirement of constitutional standing closely mirrors the showing of an "immediate and irreparable injury, loss, or damage," which conditions the issuance of a Temporary Restraining Order, pursuant to Rule 65(b), Federal Rules of Civil Procedure. Accordingly, as the Plaintiff cannot satisfy the injury in fact element of constitutional standing, he is likewise unable to meet the threshold requisites of Rule 65(b).

16. While our recommendation here may well harbinger a Motion to Dismiss on standing grounds, we do not reach that question now. Whether the Plaintiff has sufficient standing to generally present a cognizable "case" or "controversy," is best left to another day when all of the parties can focus on the criticality of the issues that such a Motion will present. See, e.g., *Berry v. City of Little Rock,* supra.