Labombard v. Textron Auto.          CV-98-599-JD  06/23/99
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Lynn M. Labombard

     v.                              Civil No. 98-599-JD

Textron Automotive
Interiors Co.


                         O R D E R


     Plaintiff Lynn Labombard, appearing pro se, brings an action

against her former employer, Textron Automotive Interiors,

alleging that Textron laid off employees in violation of the

Worker Adjustment and Retraining Notification Act ("WARN Act"),

29 U.S.C.A. § 2101-09 (West Supp. 1998).  Both Labombard and

Textron have filed motions for summary judgment (documents no. 9

and 16).[1]  For the reasons that follow, the court grants summary

judgment in favor of Textron.


                        Background

     Textron Automotive Interiors, a supplier of automotive

parts, operated plants in Dover and Farmington, New Hampshire, in

1995.  Lynn Labombard was an employee of Textron Automotive

_____

     [1]The plaintiff's motion for leave to file evidentiary
materials (document no. 27) is granted and the materials were
considered as part of the record for the summary judgment
motions.

Interiors in 1995 working in the Dover plant in the KO6 production line. During 1995, several product contracts, including the Ford Taurus/Sable armrest ("DN-5") program, were not renewed so that work on those products ended or "balanced out." Also during 1995, Textron considered consolidating some of the operations at the Dover and Farmington plants.

The production program for the DN-5 product involved employees in the injection molding department of business unit 1, the KO6 paint line of business unit 6, and foam line 2 of business unit 2. The employees who worked on the DN-5 program also worked on production programs for other products. In March of 1995, Textron became aware that the DN-5 program would balance out in mid-May to June which was projected to result in layoffs of eighty-five employees. Between March 1, 1995, and September 30, 1995, a total of 138 employees were laid off from the Dover plant because of the balancing out of the DN-5 program: 27 from the injection molding department, 20 from the KO6 paint line, and 91 from foam line 2.[2]

_____

[2]Although Labombard alleges that Textron admitted in a different case that eighty-three employees were laid off within a thirty-day period due to the balancing out of the DN-5 program, she has not provided evidence to support her allegation. See Fed. R. Civ. P. 56(e). In addition, the court's reading of the referenced document, which was a "response" not an affidavit, differs significantly from Labombard's representation. Therefore, Labombard has not submitted evidence of her version of

Labombard, however, was not working when she alleges that the other DN-5 program employees were laid off in June of 1995, because she was injured and left work in May. She applied for and received workers' compensation benefits. She was laid off on September 1, 1995, so that she could qualify for insurance continuation coverage under COBRA. She continued to receive workers' compensation benefits until she was paid a lump sum in December of 1996 after she was determined to be permanently partially disabled.

## Discussion

Labombard asserts that she brings her suit under the WARN Act for herself and "all similarly situated [Textron] employees," and moves for summary judgment. She contends that the balancing out of the DN-5 program was a plant closing that required notice under the WARN Act. Textron moves for summary judgment on several grounds including that the balancing out of the DN-5 program was not subject to the WARN Act and Labombard was not affected by the closure.[3]

_____

the number and timing of layoffs for purposes of summary judgment.

[3]Textron continues to argue that the disposition of Allan Lewis's case has preclusive effect in this case. That issue was resolved against Textron in the court's order, in this case,

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The record evidence is taken in the light most favorable to the nonmoving party.  Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 748 (1st Cir. 1996).  "An issue is only 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor, while a fact is only 'material' if it has the potential to affect the outcome of the suit under the applicable law."  Bourque v. F.D.I.C., 42 F.3d 704, 707-08 (1st Cir. 1994) (quotations omitted).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Warn Act requires an employer of more than 100 employees to provide written notice to "affected employees" sixty days before a plant closing or mass layoff.  29 U.S.C.A. § 2102(a) (West 1999).  "[A]ffected employees" are those "who may reasonably be expected to experience an employment loss as a

dated March 2, 1999.  Textron's persistence in this regard is neither helpful nor a wise use of resources.

4

consequence of a proposed plant closing or mass layoff by their employer."  29 U.S.C.A. § 2101(a)(5).  A plant closing is "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees."  29 U.S.C.A. § 2101(a)(2).

The Act provides an exclusive remedy for violation of the Act through a civil action to recover statutory damages and attorneys' fees.  29 U.S.C.A. § 2104(a)(1) and (6), and (b)(West 1999).  "Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff. . . ."  § 2104(a)(1).  An "aggrieved employee" is "an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not receive timely notice . . . as required by section 2102 of this title."  § 2104(a)(7).

Based on the record presented for summary judgment, it is undisputed that Textron did not provide written notice under the WARN Act to employees, including Labombard, that might reasonably

5

have been expected to be affected by the balancing out of the DN-5 program.  The parties dispute whether the balancing out of the DN-5 program was a "plant closing" under section 2102(a). Although Textron laid off more than fifty employees as a result of the loss of the DN-5 contract, the record does not clearly show whether the layoffs occurred within a thirty-day period. See § 2101(a)(2).  The parties also dispute whether the DN-5 program was an "operating unit" within the meaning of section 2101(a)(2).  Based on the record presented for summary judgment, it is unlikely that the DN-5 program was an "operating unit," making it unlikely that a "plant closing" occurred.  Therefore, it is at least disputed whether the anticipated balancing out of the DN-5 program triggered WARN Act requirements at all. However, this issue cannot be resolved on the merits before addressing the standing issue raised in this case.

It is also undisputed that Labombard was not laid off as a result of the balancing out of the DN-5 program since she was out of work, collecting workers' compensation benefits, until she was laid off in September to allow her to qualify for COBRA benefits. Although Labombard might be an "aggrieved employee," if she could show that Textron was required by the Act to provide notice, nevertheless, she did not suffer an employment loss as a result of the closing of the DN-5 program.  Having not suffered an

6

injury as a result of an alleged violation of the WARN Act, Labombard lacks standing to bring suit under the ACT on her own behalf. <u>See</u> § 2104(a)(1); <u>see also</u> <u>Food and Commercial Workers v. Brown Group, Inc.</u>, 517 U.S. 544, 551 (1996).

Labombard contends that her suit is brought on behalf of other "similarly situated" Textron employees. Section 2104(a)(5) grants individual plaintiffs standing to sue as representatives of "other persons similarly situated." Labombard's attempt to find standing in a representational capacity fails on several grounds. First, Labombard cannot herself be a plaintiff under the WARN Act. Second, even if her personal lack of standing would not disqualify her as the representative of a group of aggrieved employees, the circumstances of her layoff distinguish her from the others who were laid off due to the closing of the DN-5 program, and thus prevent her from being "similarly situated" with the others. Third, and most importantly, Labombard's pro se status prevents her from serving as the representative of a class of other similarly situated employees. <u>See, e.g.</u>, <u>Allnew v. Duluth</u>, 983 F. Supp. 825, 830 (D. Minn. 1997) (citing cases).

Since Labombard lacks standing to maintain her action under the WARN Act, the court lacks jurisdiction to consider the

7

remaining issues raised by Textron.  See <u>Steel Co. v. Citizens</u> <u>for a Better Environment</u>, 118 S. Ct 1003, 1020 (1998).

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion for summary judgment (document no. 16) is granted, and the plaintiff's motion for summary judgment (document no. 9) is denied.  Plaintiff's motion leave to refile documents (document no. 27) is granted.  Plaintiff's motion for default (document no. 26) is denied as moot.  The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

June 23, 1999

cc:  Lynn M. Labombard, pro se
     Debra Dyleski-Najjar, Esquire

8