**Gary L. KELLAS, Plaintiff–Appellant,**

v.

**Michael P. LANE, Philip L. Tinsley, Mark Varner, David Zempel, Ike Tressler, Lieutenant Ticer, Davis Morris, R. Bogan, James W. Fairman, Jr., Frank X. Zeimetz, Stacey McKinley, Linwood Johnson, Defendants–Appellees.**

No. 89–2923.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 9, 1990.[*]

Decided Oct. 18, 1990.[**]

Amended as an Opinion Jan. 22, 1991.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such state-

ment having been filed, the appeal has been submitted on the briefs.

[**] This appeal was originally decided by unpublished order on October 18, 1990. *See* Circuit Rule 53. The court, upon request, issues this decision as an opinion.

Gary L. Kellas, Joliet, Ill., pro se.

Neil F. Hartigan, Atty. Gen., Jerald S. Post, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before COFFEY, FLAUM and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

## I.

After having served 360 days in disciplinary segregation in the Centralia Correctional Center, inmate Gary L. Kellas was moved to the Joliet Correctional Center, where he was kept in disciplinary segregation for three more days and then, on January 27, 1988, was placed in involuntary protective custody without notice. Upon filing a grievance, he was summoned before the Illinois Department of Corrections Administrative Review Board on February 23, 1988. At that time Kellas told the Board that if they wanted to keep him in involuntary protective custody for a while, he understood, but that he was interested in knowing how long he was going to be confined in that area. The Board unanimously decided that it was in the best interest of Kellas to continue his confinement in protective custody "in view of his rank in the Northsiders gang." Complaint, Exhibit G. Kellas claims that his custody status has not been reevaluated.

Kellas filed a civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985(3) arising under the first and fourteenth amendments. On the same day he also filed a motion for a preliminary injunction seeking to enjoin the defendant prison officials from keeping him detained in protective custody involuntarily. The district court denied his motion for a preliminary injunction, finding that Kellas did not demonstrate irreparable harm or an inadequate remedy at law. He now appeals from that denial.

## II.

Appellate review of a district court's decision to grant or deny a preliminary injunction is deferential "insofar as that decision involves the discretionary acts of weighing evidence or balancing equitable factors," *United States v. Baxter Healthcare Corp.*, 901 F.2d 1401, 1407 (7th Cir.1990), but is limited and will be reversed only if the district court has abused its discretion. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1180 (7th Cir.1989). However, any legal conclusions reached during the consideration of a motion for a preliminary injunction are subject to *de novo* review. *Id.* at 1181.

"The purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-el v. Klincar*, 841 F.2d 712, 717 (7th Cir.1988). To support the issuance of a preliminary injunction, a plaintiff must demonstrate: 1) a reasonable likelihood of success on the merits; 2) the inadequacy of a remedy at law; 3) the existence of irreparable harm without the injunction; 4) that the threat of harm to the plaintiff outweighs any harm to the defendant if the injunction were issued; 5) that the public interest would not be disserved if the injunction were granted. *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1014–15 (7th Cir.1990). Though "[t]he plaintiff must satisfy each of these elements to prevail," *id.* at 1015, his threshold burden is to show the first three factors. *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369, 1371 (7th Cir. 1989). Only once this burden is met does the inquiry become "a 'sliding scale' analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits." *Id.*

The district court did not reach the sliding scale analysis because it found that Kellas did not meet his threshold burden of showing the inadequacy of a remedy at law or irreparable harm. As in *Ping*, we agree

494

that the sliding scale analysis was not necessary in this case, but we find that the injunction should not have been granted because Kellas did not meet his threshold burden of showing some likelihood of success on the merits. *Ping*, 870 F.2d at 1372.

The plaintiff need only show that his "chances are better than negligible." *Somerset House*, 900 F.2d at 1015. Notwithstanding this low standard, we believe that, as a matter of law, Kellas has no likelihood of prevailing on the merits and, consequently, the preliminary injunction was properly denied.

■ Kellas contends that he had a liberty interest in being in the general prison population and that the defendant prison officials violated his constitutional right to due process of law. While section 1983 itself confers no substantive federal rights, it is designed to remedy deprivations of federal rights by a state actor. *Estate of Himelstein v. City of Fort Wayne, Ind.*, 898 F.2d 573, 575 (7th Cir.1990). "To establish a deprivation of a constitutionally protected interest, an individual must demonstrate a 'legitimate claim of entitlement' which has been interfered with by the state." *Russ v. Young*, 895 F.2d 1149, 1152 (7th Cir.1990). A claim of entitlement to the due process rights of life, liberty, and property can arise from either the due process clause or state law. *Wallace v. Robinson*, 914 F.2d 869, 872 (7th Cir.1990). Though the fourteenth amendment itself does not create a liberty interest in a prisoner's remaining in the general population, *Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir.1990), "state law may create enforceable liberty interests in the prison setting." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). However, state procedural guidelines in themselves do not give rise to a liberty interest. *Russ*, 895 F.2d at 1153. Rather, the test for whether a statutory or regulatory procedure creates a protected due process interest is whether the state statutes or regulations have used "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed," *Wallace*, 914 F.2d at 872. By the use of such language the state places substantive limitations on official discretion both by establishing substantive predicates to govern the official decisionmaking process and by mandating a certain outcome if the criteria have been met. *Joihner v. McEvers*, 898 F.2d 569, 571 (7th Cir.1990).

■ Kellas contends that the Procedure for Involuntary Placement, section 501.-350,[1] places substantive limitations on the

1. Section 501.350 Procedure for Involuntary Placement reads:

a) In the event that any employee becomes aware of specific information which indicates that the safety or security of a committed person might be threatened, the employee shall transmit this information to the Chief Administrative Officer.

b) If the Chief Administrative Officer or his designee determines that there exists a clear and immediate threat to the safety of a committed person, the Chief Administrative Officer or his designee shall offer the person placement in protective custody. If he refuses, the Chief Administrative Officer or his designee may administratively place him involuntarily in protective custody. The committed person shall be provided with notice of this decision and a hearing before the Assignment Committee within three working days after such placement.

c) The Assignment Committee shall make a recommendation to the Chief Administrative Officer regarding the committed person's protective custody status. Among other things, the Committee may recommend that the person remain in protective custody, be returned to the general population or be transferred to another facility. The written recommendation of the Committee shall be forwarded to the Chief Administrative Officer, who shall make the final determination and provide the person with a copy of his decision within seven working days after the hearing.

d) If it is determined that the committed person remain in protective custody for his safety and security or the safety and security of the facility, the Assignment Committee shall reevaluate the person's requirement for protective custody at least every 14 days. The committed person shall have the opportunity to appear before the Committee. The Committee may consider, among other matters, those factors set forth in Section 501.320(b) in making its determination. The Committee shall submit their recommendations to the Chief Administrative Officer or his designee, who shall make the final determination.

e) The Chief Administrative Officer or his designee shall render his decision within three working days after receipt of the Assign-

ability of Illinois correctional officials to keep him in involuntary protective custody, and that those limitations are supported by the provisions in sections 501.300 through 501.330,[2] such as would give rise to a liberty interest protected by the due process clause. Our reading of these provisions of the Illinois Administrative Code convince us that they do not create a liberty interest in being in a prison's general population. Section 501.320(b)(1)[3] merely lists factors that the Assignment Committee *may* consider in making recommendations for placement in involuntary protective custody—it does not place substantive limitations on the ability of prison officials to keep a prisoner there. Additionally, we have held that the use of mandatory language in procedural guidelines that govern the use of temporary confinement alone do not create a liberty interest sufficient to trigger the due process clause. *Woods*, 903 F.2d at 1083. While the language used in these procedural guidelines is mandatory, expressing what the Chief Administrative Office or the Assignment Committee *shall* do when it is decided that a prisoner is to be placed involuntarily in protective custody, these guidelines are directed toward the prison officials and, thus, do not create a due process claim of entitlement on the

inmates' behalf. *Colon v. Schneider*, 899 F.2d 660, 668 (7th Cir.1990).

"We have repeatedly rejected the notion that any and all state prison rules and regulations containing such language automatically create 'legitimate claims of entitlement' triggering the procedural protections of the due process clause." *Id.* at 667. We have been particularly "reluctant to restrict unnecessarily ... the judgment of experienced prison administrators, especially those involving internal prison security and discipline." *Id.* Thus, a state creates a protected liberty interest only when it establishes "specific substantive predicates" that limit the discretion of official decisionmakers and mandates a particular outcome to be reached if the relevant criteria have been met. *Thompson*, 490 U.S. at 462–63, 109 S.Ct. at 1909–10. The procedure set forth in section 501.350 does not mandate a particular outcome if the procedures are followed. The decision whether initially to place an inmate in involuntary protective custody is discretionary where the Chief Administrative Officer determines the existence of "a clear and immediate threat to the safety of a committed person." Section 501.350(b). The decision whether an inmate remains in protective custody is also discretionary where it is determined that it is in the best interests of

---

ment Committee's recommendation. The committed person shall be personally served with a copy of the Chief Administrative Officer's decision.

f) If the committed person intends to grieve this decision, he must indicate his intent to do so, in writing, at the time he is served with the Chief Administrative Officer's decision.

1) The Chief Administrative Officer or his designee shall notify the Administrative Review Board who shall review and provide recommendations to the Director within 30 working days of its receipt, whenever possible. The Director or his designee shall make the final determination.

2) While the grievance is pending, the committed person shall remain in the protective custody area.

2. Sections 501.300 through 501.330 spell out some of the Illinois Department Corrections, Rules for Protective Custody. Section 501.300 refers to the applicability, § 501.310 to the requirements, § 501.320 to the procedure for placement, and § 501.330 to the periodic reviews of protective custody.

3. Section 501.320(b) Procedure for Placement reads in pertinent part:

The following, among other factors, may be considered by the Assignment Committee in making its recommendations:

1) Size, stature, age, degree of aggressiveness, criminal history, any history of being victimized;

2) Identification of a specific individual who has threatened and can be expected to continue to threaten to physically harm the committed person requesting protective custody status;

3) Institutional records that indicate the person has previously had difficulties adjusting within the general population due to pressure from other committed persons;

4) Written or verbal reports from correctional employees or others; or

5) Other information that in the Committee's judgment makes continued protective custody placement necessary.

the inmate's "safety and security or the safety and security of the facility." Section 501.350(d). The regulations do not prescribe which factors to consider or at which point the inmate should or should not be kept in protective custody. Because the state of Illinois has not created a liberty interest in a prisoner in the general prison population as contrasted with one confined in protective custody, Kellas does not have any likelihood of success on the challenge to his rights under this section 1983 and section 1985(3) action.

In addition, Kellas has failed to demonstrate that he has met the other two threshold elements for the granting of a preliminary injunction. First, he has not shown that there is no adequate remedy at law, that is to say, that damages are "seriously deficient as a remedy for the harm suffered." *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir.1984). Moreover, his argument that he would suffer irreparable harm if the preliminary injunction is not granted is not convincing. Irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial." *Id.* The record indicates that Kellas spent 360 days in disciplinary segregation before being placed in protective custody involuntarily. At his interview before the Illinois Department of Corrections Administrative Review Board, Kellas stated that he was "in north segregation single celled," and if they wanted to leave him there, he understood; he told the board that he just wanted to have some idea how long he was to be detained there. Complaint, Exhibit G. Neither the evidence in the record nor his allegations of irreparable harm are sufficient to demonstrate that a delay in obtaining release from segregation warrants the emergency relief of a preliminary injunction. Because Kellas has failed to make the threshold showing, we need not reach the balancing of harms analysis.

The state also submits that the preliminary injunction was correctly denied because the motion did not comply with Rule 65(a)(1) of the Federal Rules of Civil Procedure in that the defendants were not served notice of the motion. None of the defendants had been made a party to the action, nor were they given an opportunity to present evidence against the motion. Defendants' Brief at 9 and 12–13. While the state's point is perhaps well-taken, it is a non-issue because the district court did not grant the preliminary injunction.

### III.

We AFFIRM the decision of the district court denying appellant's motion for a preliminary injunction.