Willie LASLEY, Stephen Carter, Alex West, Bruce Davis, Terry Starks, Millard Alexander, Parson Lavance, Herbert Barnes, Rickey McGee, Timothy Ford, James Thomas, Markus Durden Bey, Jeffery Mahalick, Charles Spears, Michael Wells, Eddie Brown, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Salvador GODINEZ, Warden of Stateville Correctional Center, James Schomig, Ass't Warden of Stateville Correctional Center, Mark Nelson, Superintendent at Stateville Correctional Center, Ulesses Price, Captain at Stateville Correctional Center, John Thomas, Lieutenant at Stateville Correctional Center, William Pulley, c/o at Stateville Correctional Center, Paul Rainwater, c/o at Stateville Correctional Center, Officer Hicks, c/o at Stateville Correctional Center, Officer Shega, c/o at Stateville Correctional Center, Locksmith Drew, Locksmith at Stateville Correctional Center, John Doe # 1, John Doe # 2, John Doe # 3, John Doe # 4, Defendants.

No. 92 C 4444.

United States District Court, N.D. Illinois, E.D.

Sept. 24, 1993.

Willie Lasley, pro se.

Stephen Carter, pro se.

Alex West, pro se.

Bruce Davis, pro se.

Terry Starks, pro se.

Millard Alexander, pro se.

Parson Lavance, pro se.

Herbert Barnes, pro se.

Rickey McGee, pro se.

Timothy Ford, pro se.

James Thomas, pro se.

Markus Durden Bey, pro se.

Jeffery Mahalick, pro se.

Charles Spears, pro se.

Eddie Brown, pro se.

Michael Wells, pro se.

Marina Popovic, Asst. Atty. Gen., Gen. Law Div., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, inmates at Stateville Correctional Center, bring this pro se action pursuant to 42 U.S.C. § 1983 against ten correctional officials at Stateville. Plaintiffs allege that their due process rights have been violated because they have been found guilty at Adjustment Committee hearings without any evidence to support the finding, that defendants have failed to follow procedures of the Illinois Department of Corrections ("IDOC"), and that Warden Godinez, Assistant Warden Schomig, and Superintendent Nelson have failed to supervise their subordinates to ensure that IDOC regulations were followed.

Defendants have filed motions to dismiss for each individual plaintiff, including Lasley who was terminated from this action on October 8, 1992, for failure to pay the partial filing fee. Although the dates vary from plaintiff to plaintiff, their claims entail virtually the same facts.[1]

### I. Standard of Review

Under Rule 12(b)(6) Fed.R.Civ.P., a claim may be dismissed if as matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984)).

### II. Facts

Nine of the plaintiffs, Carter, West, Davis, Starks, Alexander, Lavance, Barnes, Durden Bey, and Mahalick, allege that on September 20, 1991, Correctional Officer Hicks and locksmith Drew removed the panels above their respective cell doors. Various kinds of contraband, mainly home-made knives, were found. Each of these plaintiffs was charged with violation of Department Rule 104—Dangerous Contraband. The Adjustment Committee held disciplinary hearings on September 26, 1993. Although each of the plaintiffs claimed they had no knowledge of the contraband and averred that their cells had not been shook down before they were assigned to them, the Committee found them guilty. The plaintiffs, except for Durden Bey and

---

1. Plaintiffs seek to bring this complaint as a class action because of these factual similarities. One of the prerequisites for class action certification is a finding that the representative parties can "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). One of the factors the court must consider in determining the adequacy of representation is the qualifications and experience of the person actually conducting the litigation. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986); *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977). Competent representation is crucial because a judgment rendered in a class action suit for injunctive relief is binding on all mem-

bers of the class. *See Williams v. Bennett*, 689 F.2d 1370, 1381–82 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Because a layman does not ordinarily possess the legal training and expertise necessary to protect the interests of a proposed class, courts are reluctant to certify a class represented by a pro se litigant. *See Phillips v. Tobin*, 548 F.2d 408, 413–14 (2d Cir.1976); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975); *Ethnic Awareness Organization v. Gagnon*, 568 F.Supp. 1186, 1187 (E.D.Wis.1983). Given plaintiffs' pro se status, the court concludes that it would be error to certify a class in this case.

Mahalick,[2] then filed grievances with the Institutional Inquiry Board on November 23, 1991, which concurred with the Adjustment Committee's findings on December 24, 1991. Plaintiffs then filed grievances with the Administrative Review Board on January 13, 1992, but had not received hearings at the time this complaint was filed.

The remaining plaintiffs, McGee, Ford, Thomas, Spears, Wells, and Brown, claim that the various cells to which they were assigned were not shook down before they were moved into them. Shortly after being assigned to the cells, contraband was uncovered during routine shakedowns. Each was written a disciplinary ticket and found guilty by the Adjustment Committee. Only Wells grieved the committee's findings.

### III. Analysis

In *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974), the Supreme Court set forth the due process requirements that inmates must receive at disciplinary hearings: (1) advance written notice of the charges, no less than 24 hours before appearing before the Adjustment Committee; (2) an opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact finders as to the evidence relied on and the reasons for disciplinary action.

Plaintiffs challenge the third of these requirements, that is, the evidence on which the Adjustment Committee relied in imposing discipline on them. In finding plaintiffs guilty, the Adjustment Committee relied on Department Rule 504.20(e) which states in part:

> Every committed person is presumed to be responsible for any contraband or other property prohibited by this Part which is located on his person, within his cell or within areas of his housing, work, educational or vocational assignment which are under his control. Areas under a committed person's control include, but are not limited to, the door track, the window

ledge, ventilation unit, plumbing, and the committed person's desk, cabinet, shelving, storage area, bed and bedding materials in his housing assignment; ...

Plaintiffs do not deny that contraband was found when their cells were searched, but, maintaining their innocence, they contend that defendants violated IDOC Administrative Directive 05.01.111(II)(D)(1) which provides: "Prior to occupancy by a new inmate, an unoccupied living area shall be searched." If correctional officials had followed their own rules and searched the cells before plaintiffs were assigned to them, plaintiffs contend that they would have found the contraband then. This failure of defendants to abide by their own rules resulted in plaintiffs being found guilty by virtue of the constructive possession rule. This, plaintiffs aver, is a violation of their due process rights under the Fourteenth Amendment.

In order to determine if a due process violation has occurred, the court must first ascertain if Administrative Directive 05.01.111(II)(D)(1) created a liberty interest for inmates to have their cells searched before they are assigned to them.

■ A state may create a protectible liberty interest giving inmates a right they may enforce under the Fourteenth Amendment. *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir.1991). As further emphasized in *Shettle* an entitlement is created if a list of criteria has been set forth which is binding, exhaustive, and definitive. *Id.* 1252. If the list of criteria is open-ended, or if any of the criteria on the list is open-ended, or if the criteria are merely for guidance of officials and leave them free to depart, an inmate does not have a liberty that he can enforce under the Fourteenth Amendment. *Id.*

■ Reading the entire administrative directive, it is obviously for the guidance of officials as to reports documenting searches. The policy statement reads:

> In every instance in which an inmate living areas is searched, regardless of whether or

not contraband is confiscated, a report documenting the search shall be completed at the time of the shakedown.

Under the procedure for implementing this policy, the purpose reads:

The purpose of this directive is to establish a written procedure to ensure that a report is completed whenever an inmate living area is searched.

The directive then details exactly how reports documenting searches, whether or not contraband is found, are to be filled out. As plaintiffs point out, the administrative directive uses mandatory language, but guidelines directed toward prison officials do not create a due process claim of entitlement on the inmates' behalf. *Kellas v. Lane,* 923 F.2d 492, 495 (7th Cir.1990); *Colon v. Schneider,* 899 F.2d 660, 668 (7th Cir.1990).

What the administrative directive lacks, which would create the liberty interest plaintiffs seek, are substantive rules governing entitlements. *See Wallace v. Robinson,* 940 F.2d 243, 244 (7th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992) ("Liberty and property interests depend on substantive rules governing entitlements; rules addressed to motive that do not require particular action to follow particular facts lack the sort of substantive constraints necessary to create liberty or property interests.") Plaintiffs would have this court read the directive as mandating that the failure to search a cell before assigning an inmate to it to result in a prisoner not being found guilty solely on the basis of constructive possession if contraband is later found in the cell. This totally contorts the plain meaning of the directive, which is nothing more than instructions to correctional officers on the filing of reports.

The court accordingly determines that Administrative Directive 05.01.111(II)(D)(1) does not create a liberty interest for inmates to have their cells searched before they are assigned to them. Because the directive does not create a liberty interest, the failure

of guards to search cells does not, in and of itself, negate the Adjustment Committee's reliance on the constructive possession rule.[3]

■ The court now turns to plaintiffs' argument that the guilty findings were not supported by the evidence. In *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), the Supreme Court held that the basis for finding an inmate guilty of a prison rule violation is adequate under the Due Process Clause when some modicum of evidence in the record supports the findings. In *Hill* a prison guard found a prisoner who had been assaulted and saw three inmates fleeing the area. All three inmates were found guilty of assault based on the guard's statements that they were seen fleeing. Any number of scenarios could have resulted in these inmates fleeing but, as the Supreme Court emphasized, these are needless speculations for:

The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made by the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence that the finding so the disciplinary board were without support or otherwise arbitrary.

*Hill,* 472 U.S. at 457, 105 S.Ct. at 2775.

In the instant case, plaintiffs contend that the factors the Adjustment Committee relied on, that is, plaintiffs' living in the particular areas; plaintiffs' admission that contraband was recovered, and the shake down slip attached to the ticket, do not constitute "some evidence," primarily because the alleged failure of the guards to search the cells negates the constructive possession rule. As discussed above, plaintiffs do not have a liberty

---

3. In their complaint, plaintiffs originally alleged that defendants failed to follow their own procedures. However, the failure of state officials to follow their own laws is not in itself a violation of the Constitution. *See Archie v. City of Racine,* 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); *Wallace,* 940 F.2d at 248; *Dawson v. Milwaukee Housing Authority,* 930 F.2d 1283, 1286 (7th Cir.1991).

interest in having their cells searched. The alleged failure of the guards to search the cells therefore does not cancel out the constructive possession rule. Contrary to plaintiffs' argument, Administrative Directive 05.-01.111(II)(D)(1) was not implemented to balance the perceived inequities of the constructive possession rule but to ensure that reports were properly completed (which was obviously done in this case).

Plaintiffs argue that *Lenea v. Lane,* 882 F.2d 1171 (7th Cir.1989), in which the Seventh Circuit concluded that the evidence was insufficient is applicable here. In *Lenea,* the court held that whereas the evidence the Adjustment Committee relied on showed that the inmate may have had the opportunity to aid an escape, there was no evidence that he had in fact done so. By analogy, plaintiffs argue that although the contraband was found in their cells, the Adjustment Committee lacked any evidence linking them to the contraband, particularly since the cells were not searched before they were assigned to them.

The Seventh Circuit recently interpreted the *Hill* "some evidence" standard in connection with the constructive possession rule. *See Hamilton v. O'Leary,* 976 F.2d 341, 347 (7th Cir.1992). In *Hamilton,* a shakedown of the cell the plaintiff shared with three other inmates resulted in the discovery of six contraband weapons. *Id.* at 343. The Adjustment Committee found him guilty although Hamilton argued that the weapons were found in the air vent, not in his cell, and that other inmates in neighboring cells also had access to the vent and were not questioned. The court held that a 25 percent, or one-in-four, chance of guilt, on which the Adjustment Committee had made its findings, was some evidence under *Hill.* As the court held: "The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical."

In the instant case only plaintiffs and, presumably, the former occupants of the cells could have had access to the contraband. This translates into plaintiffs having a 50 percent, or one-in-two, chance of having been the parties who secreted the contraband. The Adjustment Committee's finding of guilty was accordingly based on "some evidence" and plaintiffs were accorded all the process that was their due. *See also Harms v. Godinez,* 829 F.Supp. 259 (N.D.Ill.1993) (one-in-six chance of guilt does not violate due process).

The constructive possession rule is a harsh one, but matters of prison administration, particularly in regard to security, rest peculiarly within the realm of the expertise of prison officials. *See Turner v. Safley,* 482 U.S. 78, 84–85, 107 S.Ct. 2254, 2259–60, 96 L.Ed.2d 64 (1987). Moreover, plaintiffs are not left without any protection. They attached various documents indicating that other prisoners who had been found similarly guilty had later been exonerated. In fact, defendants' counsel alleges that plaintiff Wells's disciplinary ticket was expunged on March 9, 1992.[4]

Plaintiff finally claims that Warden Godinez, Assistant Warden Schomig, and Superintendent Nelson failed to supervise, train, or instruct their subordinates as to the administrative directive governing searches of cells. The existence of a policy or custom which may have caused an injury states a claim under § 1983. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 695, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978). The critical factor, of course, is whether a constitutional injury has occurred as a result of defendants' failure to train their subordinates. As discussed earlier, plaintiffs did not have a liberty interest in having their cells searched nor did a due process violation occur in plaintiffs' disciplinary hearings. Because no constitutional injury has occurred, defendants cannot be held liable for any lack of failure to supervise, train, or instruct.

---

4. Plaintiffs also appear to obliquely allude to an equal protection claim because some inmates were allowed to take lie detector tests. Why some inmates were permitted to take lie detector tests and others were not is not the basis of an equal protection claim, however, for they do not allege that race, religion or the like were the reason for allowing some inmates to take lie detector tests. *See DeTomaso v. McGinnis,* 970 F.2d 211, 213 (7th Cir.1992).

### IV. Conclusion

For the foregoing reasons, defendants' motions to dismiss are granted and this case is dismissed with prejudice in its entirety. Any other pending motions are hereby denied as moot.