January 13, 1999 
nunc pro tunc

NO. 4-97-0895

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CRAIG P. ROMERO,                        )   Appeal from

Petitioner-Appellant,         )   Circuit Court of

v.                            )   Brown County

WILLIAM D. O'SULLIVAN, Warden,          )   No. 97MR6

Respondent-Appellee,          )   

and                           )   Honorable

IAN D. OLIVER and DONALD RENTMEISTER,   )   David K. Slocum,

Respondents.                  )   Judge Pre­sid­ing.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

 Petitioner, Craig Romero, appeals from the grant of summary judgment for respondent, William O'Sullivan, denying his petition for a writ of 
mandamus 
seeking to compel Illinois De­

partment of Corrections (Department) officials at the West­ern Illi­nois Cor­rec­tional Center (Center) to provide him ac­cess to Title 20 of the Illinois Administrative Code (Code) and the ad­

ministrative direc­tives (Directives) promulgated by the De­part­

ment.  The cir­cuit court of Brown Coun­ty found Title 20 was in the Cen­ter's law library and the Department was not man­dat­ed to pro­vide public access to the Directives and grant­ed sum­ma­ry judg­

ment deny­ing 
man­da­mus.  
Petitioner appeals, contend­ing the Direc­

tives are part of Title 20 and he has a right of access to those docu­ments.  We affirm.

Petitioner has been incarcerated at the Cen­ter since June 5, 1996.  The Center is operated by the De­part­ment.  In July 1996, petitioner requested access to Title 20 of the Code from Janet Nicholas, librarian for the Center.  The in­for­ma­tion pro­

vided by Nicholas was not satisfacto­ry to petitioner and his request was forwarded to Ian Oliver, assistant warden for the Center.  Oliver forwarded petitioner's request to Don Rentmeister, record office supervisor, and on July 19 Rentmeister provided petitioner with information regarding the Unified Code of Corrections (Unified Code) (730 ILCS 5/1-1-1 
et seq. 
(West 1996)).

After receipt of Rentmeister's letter, petitioner re­

sponded by threat­ening legal ac­tion un­less he was given per­sonal access to Title 20.  On Au­gust 16, Rentmeister in­formed peti­tion­

er ac­cess to the Code was available in the law library.  Two days later petitioner respond­ed by memo­randum stat­ing the law library con­tained only "D.R.'s" and he believed the information he was seek­ing was found in the "#800's" in the im­plementation and ad­

minis­tration of the Department's rules and regulations.  On Au­

gust 28, Rentmeister responded by providing petitioner a copy of the table of contents for the Department rules reflecting the only rule in the "800's" was Rule 801 per­taining to secure resi­

dential youth care facili­ties.  

On March 3, 1997, petitioner filed his petition for a writ of 
mandamus.  
The petition named as respondents O'Sullivan, the warden of the Center, Oliver, and Rentmeister.  The peti­tion sought the court to issue a writ of 
mandamus 
compel­ling the re­spondents to provide access to Title 20 of the Code by placing a copy in the Center law library.  On March 7, peti­tion­er moved to drop O'Sullivan and Oliver from the peti­tion but the record does not reflect the disposition of this motion.  

On April 3, respondents filed a motion for summary judg­ment.   Accompanying the motion was an affidavit from Rentmeister stating the portions of Title 20 of the Code that deal specifi­cally with the Department were already in the Cen­ter li­brary.  On May 5 petitioner filed a motion oppos­ing summary judg­ment in which he contends administrative direc­tives are part of Title 20 as it pertains to the Department and he argues he is entitled to access to the Directives that are not part of the law library of the Center.  

A hearing was held on the summary judgment motion on July 2.  No transcript of the proceedings is provided as part of the appellate record.  The trial court found as much of Title 20 as pertains to the Department is contained in the Department rules, which are available in the Center law library.  The court was unclear as to whether the Directives of the De­part­ment were also available in the library.  There­fore, the Depart­ment, as represented by respondents, was ordered to de­ter­mine whether the Directives are required to be accessi­ble in De­part­ment law li­

braries and, if so, whether they are available in the Center's library.  The court then grant­ed summa­ry judgment deny­ing 
manda­

mus 
except as to the out­standing issue.

Petitioner filed a motion to reconsider on August 1.  

Respondents filed a response to the trial court's order on August 4 admitting the Directives were not in the Cen­ter li­brary.  An affidavit from Oliver was at­tached to the re­sponse in which he stated the Directives are the internal operating pro­ce­dures of the Department.  They are not a matter of public re­cord and, if placed in the Cen­ter li­brary, could jeopardize the safety and security of the institu­tion as inmates would be familiar with the procedures to be used by De­partment personnel in handling situa­

tions arising at the institu­tion.

On August 5, the trial court granted summary judgment denying 
mandamus 
on the issue of access to the Di­rec­tives.  Peti­

tioner filed a motion to reconsider on August 14 which was denied on August 28.  This appeal followed. 

Summary judgment is properly granted when a court, after review­ing affida­vits, deposi­tions, admissions, and exhibits on file in the light most favorable to the nonmovant, de­termines no genuine issue of material fact exists and the mov­ing party is enti­tled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1996); 
Busch v. Graphic Color Corp., 
169 Ill. 2d 325,  333, 662 N.E.2d 397, 402 (1996).  On ap­peal, a re­view­ing court con­

ducts a 
de novo 
re­view of the trial court's grant of summary judgment.  
People ex rel. Hughes v. Walker, 
278 Ill. App. 3d 116,  118, 662 N.E.2d 177, 178-79 (1996).   

Petitioner filed a complaint for writ of 
mandamus.  Mandamus 
is not a writ of right but an extraordinary remedy to be issued as an exercise of judicial discretion.  
Orenic v. Illinois State Labor Relations Board, 
127 Ill. 2d 453, 467, 537 N.E.2d 784, 791 (1989).  A writ of 
mandamus 
may be used only to compel a public official or body to perform a ministerial duty in which the official exercises no discretion.  
Johnson v. Theis, 
282 Ill. App. 3d 966, 972, 669 N.E.2d 590, 594 (1996).  
Manda­mus 
is appro­

priate relief only where a petitioner can demon­strate a clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply with the terms of the writ.  
Orenic, 
127 Ill. 2d at 467-68, 537 N.E.2d at 791.  The party requesting a writ of 
mandamus 
bears the burden of dem­on­strating a clear right to the relief desired.  
Chicago Ass'n of Commerce & Industry v. Regional Transportation Au­thor­ity, 
86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981).   

We turn, first, to the issue of the por­tions of Title 20 of the Code that are rele­vant to the De­part­ment.  The respondents' uncontroverted affi­davit establishes the De­part­ment rules as found in Title 20 are found in the Center's law li­brary.  Peti­tioner does not con­test the pres­ence of the De­part­ment rules but argues they are not the authori­ty he is seek­ing.  The pres­

ence of the Depart­ment rules in the Center's li­brary is not in issue, so we need not deter­mine if peti­tioner has a right to those materials.  The remaining por­tions of Title 20 do not per­

tain to the Depart­ment and peti­tion­er, failing to dem­on­strate his right to such materi­als, has no right to re­quire their pro­duction pur­su­ant to a writ of 
man­damus.

Petitioner contends, however, the Department rules found in Title 20 are not the entire authority that must be pro­

vided him pursu­ant to his request for Title 20 information.  He con­tends the Department's Directives are also a part of Title 20 and he is entitled to this information.  Peti­tioner refers to "Directives" as the cur­rent term used to describe ad­min­is­tra­tive regulations or rules.  He cites case law dealing with admin­istra­

tive regulations and states it is applica­ble to admin­istra­tive directives.  However, these are not one and the same.  The admin­

istrative regulations that existed in the past were not simply re­named the "Administrative Direc­tives," but were repealed in 1984 (see 8 Ill. Reg. 14346-80 (eff. August 1, 1984)) and re­

placed by the rules in the Code (8 Ill. Reg. 14568-656 (eff. August 1, 1984)).  See 20 Ill. Adm. Code §103.10 
et seq. 
(1996).   The Department's rules found in the Code are dis­tinct from its Directives.  Admin­istrative rules, found in the Code, set policy objectives for the De­part­ment.  The Di­rector of the De­partment then develops the means and meth­ods of reaching the Department's poli­cy ob­jec­tives through the Direc­tives.  Fi­nal­ly, the warden of each fa­cility within the Depart­ment makes in­stitu­

tional direc­tives to adopt and imple­ment the Di­rec­tives at that institution.  See 
Department of Central Man­age­ment Ser­vices v. Illi­nois State Labor Relations Board, 
278 Ill. App. 3d 79, 89, 662 N.E.2d 131, 138 (1996); 
Illi­nois Nurses Ass'n v. Illinois State Labor Rela­tions Board, 
196 Ill. App. 3d 576, 580, 554 N.E.2d 404, 407 (1990).  Thus, Di­rectives are di­rect­ed to the staff of the Department and relate to their re­spon­si­bili­ties in implement­ing Department policy.

Petitioner argues the Department's Di­rec­tives are re­

quired to be adopted and made available to the public pur­suant to sections 5-35, 5-40 and 5-15 of the Illinois Adminis­tra­tive Pro­

ce­dure Act (Act) (5 ILCS 100/5-35, 5-40, 5-15 (West 1996)).  Peti­tioner makes no argument concerning the legali­ty of the Department's rule-making procedures but, instead, lim­its himself to arguing the Directives are rules that must be made avail­able to the public under section 5-15 of the Act.  

"Rule" is defined in the Act as follows:

"'Rule' means each agency statement of gen-

eral applicability that implements, applies,

interprets, or prescribes law or policy, but

does not include (i) statements concerning 

only the internal management of an agency and

not affecting private rights or procedures

available to persons or entities outside the

agency ***."  5 ILCS 100/1-70 (West 1996). 

Petitioner argues Directives come under the defi­ni­tion of "rule" under the Act because, while they relate to the inter­nal manage­

ment of the Department, they affect his rights.  Peti­tioner cites no Illinois case law supporting this argument and none could be found.  Federal case law, however, deals with the cre­ation of inmates' rights under the Department's rules and Di­rec­tives.  
Lasley v. Godinez, 
833 F. Supp. 714 (N.D. Ill. 1993), dealt with inmates who were disciplined after contraband was found in their cells.  They maintained their innocence and con­tended the contra­

band was left by the previous occupants of their cells.  The inmates claimed the correctional officials violated a Di­rec­tive requiring "an unoccupied living area" be searched "pri­or to occu­

pancy by a new inmate."  
Lasley, 
833 F. Supp. at 716.  The in­

mates argued if the officials had followed their own rules and searched the cells before the inmates were assigned to them, the contraband would have been found and the inmates would not have been found guilty by reason of the con­structive posses­sion rule.  
Lasley, 
833 F. Supp. at 716.  

The 
Lasley 
opinion did not explain how the inmates came into possession of the Directive and did not sug­gest in any way they be provided to inmates
.  
In­stead, the court in 
Lasley 
found the Direc­tive did not give rise to a pro­tectible liberty interest in the in­mates as the Directive merely set forth the procedure to be fol­lowed in docu­menting searches of cells prior to their occu­

pan­cy by a new in­mate.  
Lasley, 
833 F. Supp. at 716-17.

 In a case involving the administrative rules of the Department governing involuntary placement in protective custody, the Sev­enth Cir­cuit Court of Ap­peals dis­cussed what was re­quired to create a liberty inter­est in a prison in­mate.  
Kellas v. Lane, 
923 F.2d 492 (7th Cir. 1990).  While the court in 
Kellas 
was dealing with rules rather than Directives, its reasoning is equal­ly applicable to Directives.  S­tate pro­ce­dur­al guide­lines, in them­selves, do not cre­ate lib­er­ty in­ter­ests in inmates.  
Kellas, 
923 F.2d at 494.  However, when the state uses language of a mandato­ry na­ture, such as "will," "shall" or "must," a pro­

tected interest is created because the state has placed substan­

tive limitations on the dis­cretion that can be exercised by state officials.  
Kellas, 
923 F.2d at 494.  However, even when mandato­

ry language is used, where merely proce­dural guidelines are di­

rect­ed to prison offi­cials, no protectible in­terest is created for the inmates.  
Kellas, 
923 F.2d at 494-95.  The court noted its particular reluctance to restrict the discretion of prison offi­cials by finding rights for in­mates where internal prison security and discipline are con­cerned.  
Kellas, 
923 F.2d at 495; 
Colon v. Schneider, 
899 F.2d 660, 667 (7th Cir. 1990). 

Finally, in an earlier decision dealing with what were then called the administrative regulations rather than rules, the court found the regulations, dealing with procedural guidelines, did not create a protected liberty interest for inmates.  
Mathews v. Fairman, 
779 F.2d 409, 412 (7th Cir. 1985).  In 
Mathews, 
the plaintiff argued his reassignment to maximum security deprived him of due process in violation of an administrative regulation.  
Mathews, 
779 F.2d at 411.  The 
Mathews 
court noted protected liberty interests may arise from two sources, the due process clause itself and the laws of the states.  
Mathews, 
779 F.2d at 414, citing 
Hewitt v. Helms, 
459 U.S. 460, 466, 74 L. Ed. 2d 675,  685, 103 S. Ct. 864, 868-69 (1983).  As the plaintiff 
cited 
no stat­utory authority that created a protected liberty inter­est, the 
Mathews 
court found the administrative regulation he cited did not cre­ate a pro­tect­ed interest by itself.  
Mathews, 
779 F.2d at 414.   

In this case petitioner cites no statutory au­thor­i­ty for the creation of a right or protected interest that could have been denied him, but argues in the abstract that Directives for the internal management of the Department create such rights for inmates.  Fur­ther, peti­tion­er never states spe­cifi­cal­ly what rights he thinks were de­nied him but oblique­ly men­tions the terms "contraband" and "personal proper­ty."  Direc­tives dealing with those topics would easily come under the head­ing of disci­pline or secu­rity and safe­ty and, as noted in 
Kellas, 
the courts are loathe to find rights created to benefit inmates in those catego­

ries.

While the federal cases discussed here do not deal with the creation of inmate rights or protected liberty interests that could possibly be created by Directives, their rea­son­ing is per­

suasive.  We find petitioner is not enti­tled to view Di­rec­tives as part of a re­quest for the De­partment rules found in Title 20 of the Code.

Petitioner also argues denial of his request to view Directives deprives him of meaningful access to the courts.  The constitutional right of access to the courts re­quires inmates be assisted in the preparation and filing of mean­ingful legal papers by providing them with adequate law li­braries or assis­tance from persons trained in the law.  
Bounds v. Smith, 
430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498 (1977).  A prisoner claiming a denial of his right to access to the courts must es­

tab­lish he suffered an actual injury, defined as actual prej­u­dice to existing or impending litigation.  
Lewis v. Casey, 
518 U.S. 343, 348, 351, 135 L. Ed. 2d 606, 616, 618, 116 S. Ct. 2174, 2178, 2180 (1996).  

While the right of access to the courts recognized in 
Bounds 
includes the right to bring to court a grievance that an in­mate wishes to present, the state is not required to enable the inmate to 
discover 
grievances.  
Lewis, 
518 U.S. at 354, 135 L. Ed. 2d at 619, 116 S. Ct. at 2181.  In this case, petitioner has ac­cess to the Department's rules through Title 20 of the Code but he seeks, as he states in his brief, to search the Department's Di­rec­tives to "police" the Department, uncover its "hid­den agen­

das," and "throw a wrench" into its opera­tions.  These are not the purposes for which access to the courts for inmates is re­

quired.  As stated in 
Lewis:

"
Bounds 
does not guarantee inmates the 

wherewithal to transform themselves into

litigating engines capable of filing every-

thing from shareholder derivative actions

to slip-and-fall claims.  The tools it re-

quires to be provided are those that the

inmates need in order to attack their sen-

tences, directly or collaterally, and in

order to challenge the conditions of their

confinement.  Impairment of any 
other 
liti-

gating capacity is simply one of the inci-

dental (and perfectly constitutional) conse-

quences of conviction and incarceration."

(Emphasis in original.)  
Lewis, 
518 U.S. at

355, 135 L. Ed. 2d at 620, 116 S. Ct. at 2182.

Petitioner in this case has shown no actual injury.  The inju­ries the Su­preme Court 
contemplated 
in 
Lewis 
are not theo­retical but must evidence an actual hin­der­ance of an inmate's efforts to pursue a legal claim such as the dis­missal of an inmate's complaint for failure to satisfy tech­nical require­ments or the failure of an inmate to even prepare a com­plaint for an actionable harm due to law library inadequacies.  
Lew­is, 
518 U.S. at 351, 135 L. Ed. 2d at 618, 116 S. Ct. at 2180.  Petitioner at­

tempted to plead an actual injury by referring to the pos­si­bil­i­ty he would be pe­nal­ized under section 3-6-3(d) of the Uni­fied Code for filing a frivolous inmate lawsuit if he does not thor­ough­ly re­search any claims prior to filing suit.  See 730 ILCS 5/3-6-3(d) (West 1996).  However, as Di­rec­tives are pro­ce­dur­al guide­

lines that do not cre­ate in­mate rights, they would not assist peti­tioner in filing a meri­tori­ous claim.  Therefore, petitioner has failed to show he was deprived of his constitu­tional right to access to the courts by his fail­ure to access the Department's  Direc­tives.

Petitioner has failed to show a clear right to a por­

tion of his re­quested re­lief, access to the Department's Di­rec­

tives; as to the other portion, Title 20 of the Code (the Department's rules) is al­ready pro­vided in the Center's law li­

brary.  As no issue of mate­rial fact exists, the judgment of the trial court in grant­ing respondents' summary judgment motion is af­firmed.

Affirmed.      

McCULLOUGH and GARMAN, JJ., concur­.