CRAIG P. ROMERO, Petitioner-Appellant, v. WILLIAM D. O'SULLIVAN, Warden, Respondent-Appellee (Ian D. Oliver *et al.*, Respondents).

Fourth District   No. 4—97—0895

Opinion filed January 13, 1999.

Craig P. Romero, of Canton, appellant *pro se.*

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Patrick W. Carlson, Assistant Attorney General, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Craig Romero, appeals from the grant of summary judgment for respondent, William O'Sullivan, denying his petition for a writ of *mandamus* seeking to compel Illinois Department of Corrections (Department) officials at the Western Illinois Correctional Center (Center) to provide him access to Title 20 of the Illinois Administrative Code (Code) and the administrative directives (Directives) promulgated by the Department. The circuit court of Brown County found Title 20 was in the Center's law library and the Department was not mandated to provide public access to the Directives and granted summary judgment denying *mandamus*. Petitioner appeals, contending the Directives are part of Title 20 and he has a right of access to those documents. We affirm.

Petitioner has been incarcerated at the Center since June 5, 1996. The Center is operated by the Department. In July 1996, petitioner requested access to Title 20 of the Code from Janet Nicholas, librarian for the Center. The information provided by Nicholas was not satisfactory to petitioner and his request was forwarded to Ian Oliver, assistant warden for the Center. Oliver forwarded petitioner's request to Don Rentmeister, record office supervisor, and on July 19 Rentmeister provided petitioner with information regarding the Unified Code of Corrections (Unified Code) (730 ILCS 5/1—1—1 *et seq.* (West 1996)).

After receipt of Rentmeister's letter, petitioner responded by threatening legal action unless he was given personal access to Title 20. On August 16, Rentmeister informed petitioner access to the Code was available in the law library. Two days later petitioner responded by memorandum stating the law library contained only "D.R.'s" and he believed the information he was seeking was found in the "#800's" in the implementation and administration of the Department's rules and regulations. On August 28, Rentmeister responded by providing petitioner a copy of the table of contents for the Department rules reflecting the only rule in the "800's" was Rule 801 pertaining to secure residential youth care facilities.

On March 3, 1997, petitioner filed his petition for a writ of *mandamus*. The petition named as respondents O'Sullivan, the warden of the Center, Oliver, and Rentmeister. The petition sought the court to issue a writ of *mandamus* compelling the respondents to provide access to Title 20 of the Code by placing a copy in the Center law library. On March 7, petitioner moved to drop O'Sullivan and Oli-

ver from the petition but the record does not reflect the disposition of this motion.

On April 3, respondents filed a motion for summary judgment. Accompanying the motion was an affidavit from Rentmeister stating the portions of Title 20 of the Code that deal specifically with the Department were already in the Center library. On May 5 petitioner filed a motion opposing summary judgment in which he contends administrative directives are part of Title 20 as it pertains to the Department and he argues he is entitled to access to the Directives that are not part of the law library of the Center.

A hearing was held on the summary judgment motion on July 2. No transcript of the proceedings is provided as part of the appellate record. The trial court found as much of Title 20 as pertains to the Department is contained in the Department rules, which are available in the Center law library. The court was unclear as to whether the Directives of the Department were also available in the library. Therefore, the Department, as represented by respondents, was ordered to determine whether the Directives are required to be accessible in Department law libraries and, if so, whether they are available in the Center's library. The court then granted summary judgment denying *mandamus* except as to the outstanding issue.

Petitioner filed a motion to reconsider on August 1. Respondents filed a response to the trial court's order on August 4 admitting the Directives were not in the Center library. An affidavit from Oliver was attached to the response in which he stated the Directives are the internal operating procedures of the Department. They are not a matter of public record and, if placed in the Center library, could jeopardize the safety and security of the institution as inmates would be familiar with the procedures to be used by Department personnel in handling situations arising at the institution.

On August 5, the trial court granted summary judgment denying *mandamus* on the issue of access to the Directives. Petitioner filed a motion to reconsider on August 14 which was denied on August 28. This appeal followed.

■ Summary judgment is properly granted when a court, after reviewing affidavits, depositions, admissions, and exhibits on file in the light most favorable to the nonmovant, determines no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333, 662 N.E.2d 397, 402 (1996). On appeal, a reviewing court conducts a *de novo* review of the trial court's grant of summary judgment. *People ex rel. Hughes v. Walker*, 278 Ill. App. 3d 116, 118, 662 N.E.2d 177, 178-79 (1996).

■ Petitioner filed a complaint for writ of *mandamus*. *Mandamus* is not a writ of right but an extraordinary remedy to be issued as an exercise of judicial discretion. *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 467, 537 N.E.2d 784, 791 (1989). A writ of *mandamus* may be used only to compel a public official or body to perform a ministerial duty in which the official exercises no discretion. *Johnson v. Theis*, 282 Ill. App. 3d 966, 972, 669 N.E.2d 590, 594 (1996). *Mandamus* is appropriate relief only where a petitioner can demonstrate a clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply with the terms of the writ. *Orenic*, 127 Ill. 2d at 467-68, 537 N.E.2d at 791. The party requesting a writ of *mandamus* bears the burden of demonstrating a clear right to the relief desired. *Chicago Ass'n of Commerce & Industry v. Regional Transportation Authority*, 86 Ill. 2d 179, 185, 427 N.E.2d 153, 156 (1981).

We turn, first, to the issue of the portions of Title 20 of the Code that are relevant to the Department. The respondents' uncontroverted affidavit establishes the Department rules as found in Title 20 are found in the Center's law library. Petitioner does not contest the presence of the Department rules but argues they are not the authority he is seeking. The presence of the Department rules in the Center's library is not in issue, so we need not determine if petitioner has a right to those materials. The remaining portions of Title 20 do not pertain to the Department and petitioner, failing to demonstrate his right to such materials, has no right to require their production pursuant to a writ of *mandamus*.

Petitioner contends, however, the Department rules found in Title 20 are not the entire authority that must be provided him pursuant to his request for Title 20 information. He contends the Department's Directives are also a part of Title 20 and he is entitled to this information. Petitioner refers to "Directives" as the current term used to describe administrative regulations or rules. He cites case law dealing with administrative regulations and states it is applicable to administrative directives. However, these are not one and the same. The administrative regulations that existed in the past were not simply renamed the "Administrative Directives," but were repealed in 1984 (see 8 Ill. Reg. 14346-80 (eff. August 1, 1984)) and replaced by the rules in the Code (8 Ill. Reg. 14568-656 (eff. August 1, 1984)). See 20 Ill. Adm. Code § 103.10 *et seq.* (1996).

The Department's rules found in the Code are distinct from its Directives. Administrative rules, found in the Code, set policy objectives for the Department. The Director of the Department then develops the means and methods of reaching the Department's policy

objectives through the Directives. Finally, the warden of each facility within the Department makes institutional directives to adopt and implement the Directives at that institution. See *Department of Central Management Services v. Illinois State Labor Relations Board,* 278 Ill. App. 3d 79, 89, 662 N.E.2d 131, 138 (1996); *Illinois Nurses Ass'n v. Illinois State Labor Relations Board,* 196 Ill. App. 3d 576, 580, 554 N.E.2d 404, 407 (1990). Thus, Directives are directed to the staff of the Department and relate to their responsibilities in implementing Department policy.

Petitioner argues the Department's Directives are required to be adopted and made available to the public pursuant to sections 5—35, 5—40 and 5—15 of the Illinois Administrative Procedure Act (Act) (5 ILCS 100/5—35, 5—40, 5—15 (West 1996)). Petitioner makes no argument concerning the legality of the Department's rule-making procedures but, instead, limits himself to arguing the Directives are rules that must be made available to the public under section 5—15 of the Act.

"Rule" is defined in the Act as follows:

>  " 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency \*\*\*."
> 5 ILCS 100/1—70 (West 1996).

Petitioner argues Directives come under the definition of "rule" under the Act because, while they relate to the internal management of the Department, they affect his rights. Petitioner cites no Illinois case law supporting this argument and none could be found. Federal case law, however, deals with the creation of inmates' rights under the Department's rules and Directives. *Lasley v. Godinez,* 833 F. Supp. 714 (N.D. Ill. 1993), dealt with inmates who were disciplined after contraband was found in their cells. They maintained their innocence and contended the contraband was left by the previous occupants of their cells. The inmates claimed the correctional officials violated a Directive requiring "an unoccupied living area" be searched "prior to occupancy by a new inmate." *Lasley,* 833 F. Supp. at 716. The inmates argued if the officials had followed their own rules and searched the cells before the inmates were assigned to them, the contraband would have been found and the inmates would not have been found guilty by reason of the constructive possession rule. *Lasley,* 833 F. Supp. at 716.

The *Lasley* opinion did not explain how the inmates came into possession of the Directive and did not suggest in any way they be provided to inmates. Instead, the court in *Lasley* found the Directive

did not give rise to a protectible liberty interest in the inmates as the Directive merely set forth the procedure to be followed in documenting searches of cells prior to their occupancy by a new inmate. *Lasley,* 833 F. Supp. at 716-17.

In a case involving the administrative rules of the Department governing involuntary placement in protective custody, the Seventh Circuit Court of Appeals discussed what was required to create a liberty interest in a prison inmate. *Kellas v. Lane,* 923 F.2d 492 (7th Cir. 1990). While the court in *Kellas* was dealing with rules rather than Directives, its reasoning is equally applicable to Directives. State procedural guidelines, in themselves, do not create liberty interests in inmates. *Kellas,* 923 F.2d at 494. However, when the state uses language of a mandatory nature, such as "will," "shall" or "must," a protected interest is created because the state has placed substantive limitations on the discretion that can be exercised by state officials. *Kellas,* 923 F.2d at 494. However, even when mandatory language is used, where merely procedural guidelines are directed to prison officials, no protectible interest is created for the inmates. *Kellas,* 923 F.2d at 494-95. The court noted its particular reluctance to restrict the discretion of prison officials by finding rights for inmates where internal prison security and discipline are concerned. *Kellas,* 923 F.2d at 495; *Colon v. Schneider,* 899 F.2d 660, 667 (7th Cir. 1990).

Finally, in an earlier decision dealing with what were then called the administrative regulations rather than rules, the court found the regulations, dealing with procedural guidelines, did not create a protected liberty interest for inmates. *Mathews v. Fairman,* 779 F.2d 409, 412 (7th Cir. 1985). In *Mathews,* the plaintiff argued his reassignment to maximum security deprived him of due process in violation of an administrative regulation. *Mathews,* 779 F.2d at 411. The *Mathews* court noted protected liberty interests may arise from two sources, the due process clause itself and the laws of the states. *Mathews,* 779 F.2d at 414, citing *Hewitt v. Helms,* 459 U.S. 460, 466, 74 L. Ed. 2d 675, 685, 103 S. Ct. 864, 868-69 (1983). As the plaintiff *cited* no statutory authority that created a protected liberty interest, the *Mathews* court found the administrative regulation he cited did not create a protected interest by itself. *Mathews,* 779 F.2d at 414.

■ In this case petitioner cites no statutory authority for the creation of a right or protected interest that could have been denied him, but argues in the abstract that Directives for the internal management of the Department create such rights for inmates. Further, petitioner never states specifically what rights he thinks were denied him but obliquely mentions the terms "contraband" and "personal property." Directives dealing with those topics would easily come

under the heading of discipline or security and safety and, as noted in *Kellas,* the courts are loathe to find rights created to benefit inmates in those categories.

While the federal cases discussed here do not deal with the creation of inmate rights or protected liberty interests that could possibly be created by Directives, their reasoning is persuasive. We find petitioner is not entitled to view Directives as part of a request for the Department rules found in Title 20 of the Code.

Petitioner also argues denial of his request to view Directives deprives him of meaningful access to the courts. The constitutional right of access to the courts requires inmates be assisted in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or assistance from persons trained in the law. *Bounds v. Smith,* 430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498 (1977). A prisoner claiming a denial of his right to access to the courts must establish he suffered an actual injury, defined as actual prejudice to existing or impending litigation. *Lewis v. Casey,* 518 U.S. 343, 348, 351, 135 L. Ed. 2d 606, 616, 618, 116 S. Ct. 2174, 2178, 2180 (1996).

While the right of access to the courts recognized in *Bounds* includes the right to bring to court a grievance that an inmate wishes to present, the state is not required to enable the inmate to *discover* grievances. *Lewis,* 518 U.S. at 354, 135 L. Ed. 2d at 619, 116 S. Ct. at 2181. In this case, petitioner has access to the Department's rules through Title 20 of the Code but he seeks, as he states in his brief, to search the Department's Directives to "police" the Department, uncover its "hidden agendas," and "throw a wrench" into its operations. These are not the purposes for which access to the courts for inmates is required. As stated in *Lewis:*

> "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." (Emphasis in original.) *Lewis,* 518 U.S. at 355, 135 L. Ed. 2d at 620, 116 S. Ct. at 2182.

Petitioner in this case has shown no actual injury. The injuries the Supreme Court *contemplated* in *Lewis* are not theoretical but must evidence an actual hinderance of an inmate's efforts to pursue a legal claim such as the dismissal of an inmate's complaint for failure to

satisfy technical requirements or the failure of an inmate to even prepare a complaint for an actionable harm due to law library inadequacies. *Lewis,* 518 U.S. at 351, 135 L. Ed. 2d at 618, 116 S. Ct. at 2180. Petitioner attempted to plead an actual injury by referring to the possibility he would be penalized under section 3—6—3(d) of the Unified Code for filing a frivolous inmate lawsuit if he does not thoroughly research any claims prior to filing suit. See 730 ILCS 5/3—6—3(d) (West 1996). However, as Directives are procedural guidelines that do not create inmate rights, they would not assist petitioner in filing a meritorious claim. Therefore, petitioner has failed to show he was deprived of his constitutional right to access to the courts by his failure to access the Department's Directives.

Petitioner has failed to show a clear right to a portion of his requested relief, access to the Department's Directives; as to the other portion, Title 20 of the Code (the Department's rules) is already provided in the Center's law library. As no issue of material fact exists, the judgment of the trial court in granting respondents' summary judgment motion is affirmed.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.