# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Lucas v. Department of Corrections, 2012 IL App (4th) 110004**

---

| | |
|---|---|
| Appellate Court Caption | SHAUN B. LUCAS, Plaintiff-Appellant, v. THE DEPARTMENT OF CORRECTIONS and MICHAEL P. RANKLE, Director; THE PRISONER REVIEW BOARD and JORGE MONTES, Chairman; and THE LAKE COUNTY SHERIFF'S DEPARTMENT, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket Nos. 4-11-0004, 4-11-0310 cons. |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | February 16, 2012<br><br>March 30, 2012<br>February 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's action alleging that he was kept in prison past the scheduled date for the commencement of his period of mandatory supervised release was properly dismissed for failure to state a cause of action, since electronic monitoring was a condition of MSR, but plaintiff did not have a residence suitable for such monitoring and the Department of Corrections had no duty to find such a residence for plaintiff, even though the Department attempted to do so. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-CH-645; the Hon. Leo J. Zappa, Jr., Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Shaun B. Lucas, of Bridgeview, appellant *pro se*. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sunil Bhave, Assistant Attorney General, of counsel), for appellees. |

| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Pope and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Shaun B. Lucas, sued the Department of Corrections (DOC) and its director as well as the Prisoner Review Board and its chairman for keeping him in prison beyond the scheduled commencement of his mandatory supervised release (MSR). The trial court granted defendants' motion to dismiss the complaint for failure to state a cause of action, and the court struck the case.

¶ 2     Plaintiff appeals, and we affirm the trial court's judgment because (1) electronic monitoring was a condition of MSR, (2) plaintiff had no residence suitable for electronic monitoring, and (3) DOC had no duty to find such a residence for plaintiff, although DOC tried to do so.

¶ 3                                          I. BACKGROUND

¶ 4     Lucas alleges as follows in his complaint. On April 9, 1999, the Lake County circuit court sentenced him to imprisonment for 12 years and 6 months for the offense of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 1998)). Statutory law required that he serve 85% of the sentence, but the court allowed him credit for 149 days in presentence confinement.

¶ 5     On March 11, 2009, when plaintiff was nearing the end of his prison sentence, the Prisoner Review Board served upon him a document stating that his MSR would be "Effective When Eligible" (meaning, evidently, that MSR would begin when he was eligible for it) and that the MSR would be subject to some special conditions, including electronic monitoring. Plaintiff signed the document, thereby acknowledging that he had received the list of conditions (they were listed in the document) and that he understood that his failure to follow the conditions could result in the revocation of "parole," *i.e.*, MSR.

¶ 6     Plaintiff's MSR was scheduled to begin on July 2, 2009. On July 1, 2009, DOC tendered

to him a "Parole or Mandatory Supervised Release Agreement." Under the terms of this agreement, electronic monitoring was a condition of MSR–as the Prisoner Review Board already had decided. At first, plaintiff balked at signing the agreement, but "[a]fter being threatened with punishment under DOC rules and regulations if he didn't sign," he gave in and signed it. (In his briefs, plaintiff does not specify what the threatened "punishment" was or which "DOC rules and regulations" purportedly authorized the punishment.)

¶ 7    On July 2, 2009, DOC refused to release plaintiff on MSR because he was indigent and had no residence in which to live, making it impossible for him to comply with electronic monitoring, which was a condition of MSR. A "Parole Violation Report," dated August 13, 2009, stated as follows:

> "Offender is in violation of rule #16 in that he is mandated by the Prisoner Review Board to be supervised on electronic monitoring/GPS. This agency attempted to place the offender at (all) places with family and/or friends in the community and no suitable host site was found to supervise the offender on electronic monitoring/GPS. This agency attempted to place the offender at (all) places that the Illinois Department of Corrections would pay for and the paid placements for any number of reasons could not accept the offender. The offender is unable to fulfill the mandate by electronic monitoring/GPS place by the Prisoner Review Board."

An "approved electronic monitoring device" is, by statutory definition, "a device approved by the supervisory authority which is intended primarily to record or transmit information as to the defendant's presence or nonpresence *in the home*." (Emphasis added.) 730 ILCS 5/5-8A-2(A) (West 2010). Because DOC had not succeeded in finding a home for plaintiff that could accommodate electronic monitoring, a condition of his MSR was unfulfilled. Consequently, DOC declined to release him (we note, however, that according to DOC's website (http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited March 23, 2012)), plaintiff currently is not an inmate).

¶ 8    On August 24, 2009, in the Sangamon County circuit court, plaintiff filed a complaint for damages and injunctive relief. In his complaint, he alleged that defendants had a duty to locate a residence for him that could accommodate electronic monitoring and that DOC had failed to approve a release plan for him by the end of his determinate sentence of imprisonment. He asserted that continuing to hold him in prison, instead of releasing him on MSR, was false imprisonment. Therefore, he sought general, special, and punitive damages as well as an injunction ordering defendants to (1) provide him a suitable residence during MSR and (2) immediately release him.

¶ 9    On September 1, 2010, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), defendants filed a motion to dismiss the complaint for failure to state a cause of action. In their motion for dismissal, defendants explained that although DOC, in its discretion, could assist inmates in obtaining residential placement suitable for MSR, DOC had no duty to do so. Citing our decision in *Neville v. Walker*, 376 Ill. App. 3d 1115 (2007), defendants argued that an inmate who could not comply with the conditions of MSR imposed by the Prisoner Review Board was not entitled to be released on MSR. Defendants also raised the defense of sovereign immunity.

¶ 10    On August 24, 2009, the trial court granted defendants' motion for dismissal and struck the case.

¶ 11    This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13    We are aware of no statute requiring DOC to find residential placement for an inmate before the commencement of MSR. Instead, section 3-14-3 of the Unified Code of Corrections (730 ILCS 5/3-14-3 (West 2008)) states that DOC "*may* in addition to other services provide *** assistance in residential placement." (Emphasis added.) The word "may" usually signifies discretion, not duty. *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006).

¶ 14    In his motion to reconsider the dismissal of his complaint, plaintiff argued that DOC's administrative directive No. 04.50.115 (effective November 1, 2007) imposed on DOC a duty to find suitable residential placement for him. Paragraph 5(b)(3)(a) of the administrative directive stated that prior to the offender's being released, "[t]he place of intended residence shall be verified with the offender" and "[i]f the Parole Supervisor or the Interstate Compact Unit does not approve of the proposed address given and the offender can give no other address," "[t]he Placement Resource Unit shall be contacted and provide an approved alternative address." We are aware of no authority, however, for the premise that an administrative directive creates a duty on the part of the agency. It is true that administrative rules have the force of law (*People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008)), but administrative directives are not administrative rules (*Romero v. O'Sullivan*, 302 Ill. App. 3d 1031, 1034 (1999)). DOC's administrative directive No. 04.50.115 is not part of the Illinois Administrative Code. An administrative directive is directed solely at the staff of the agency, not at the public, and hence it creates no duty on the part of the agency toward the public. See *id.* at 1034-35; *Kirkland Masonry, Inc. v. Commissioner of Internal Revenue*, 614 F.2d 532, 534 (5th Cir. 1980).

¶ 15    So, DOC had no statutory or regulatory *duty* to obtain a residential placement for plaintiff that would enable him to comply with the electronic monitoring that was a condition of his MSR (although DOC had statutory *authority* to try to do so–and did try to do so). As we said in *Neville*, "an inmate is entitled to MSR only so long as that inmate complies with the conditions imposed by the [Prisoner Review] Board." *Neville*, 376 Ill. App. 3d at 1120. For sex offenders, one of those conditions can be electronic monitoring. *Id.* at 1119. In plaintiff's case, the Prisoner Review Board decided there should be no MSR without electronic monitoring. The Prisoner Review Board was entitled to make that judgment call. See 730 ILCS 5/3-3-7(b-1)(6) (West 2008). Because plaintiff lacked a residence in which electronic monitoring was possible, there could be no MSR until such a residence was found. Instead of doing anything tortious, DOC simply followed the law, and thus there is no basis for the issuance of an injunction.

¶ 16    In addition to an injunction, plaintiff seeks damages, but to be liable for damages, DOC had to commit a tort, and we do not see in what respect DOC did so. And, besides, even if DOC did something tortious in keeping plaintiff in prison beyond the scheduled

-4-

commencement of his MSR, the State has sovereign immunity from the claim for damages. See 705 ILCS 505/8(d) (West 2008).

¶ 17    For all these reasons, in our *de novo* review, taking the well-pleaded facts of plaintiff's complaint as true and regarding those factual allegations in a light most favorable to him, we conclude the trial court was correct in granting defendants' motion to dismiss the complaint. See *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 527 (1999).

¶ 18                                III. CONCLUSION

¶ 19    For the foregoing reasons, we affirm the trial court's judgment.

¶ 20    Affirmed.