In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3332

CHARLES A. CARROLL,

*Petitioner-Appellant,*

*v.*

TIMOTHY DAUGHERTY,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 3862 — **Harry D. Leinenweber**, *Judge.*

ARGUED AUGUST 5, 2014 — DECIDED AUGUST 25, 2014

Before BAUER, POSNER, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* Charles Carroll was convicted in an Illinois court of aggravated sexual assault and sentenced to 28 years in prison. That was in 1999 but a decade later he obtained a measure of postconviction relief and was resentenced, this time to 26 years in prison. Neither the judge at sentencing nor the official copy of the judgment mentioned supervised release. (Nor for that matter had the 1999 sentence.) But at some point Carroll learned that a three-year

term of supervised release was required by statute to be part of his sentence, 730 ILCS 5/5-8-1(d), and that therefore he would have to undergo it even though it hadn't been mentioned when his sentence was imposed. He filed a petition in federal district court for habeas corpus, see 28 U.S.C. § 2254, asking the court to order him excused from having to serve any period of supervised release. His ground was that to impose punishment in excess of the sentence delivered by a judge violates clearly established federal law (a ground for relief in a habeas corpus proceeding under section 2254). A term of supervised release is a form of punishment, though that is not all it is.

Later Carroll indicated that what he *really* wanted was not to be excused from having to undergo supervised release but to have his prison term reduced to 23 years so that the aggregate amount of time that he spends in prison *and* on supervised release will be 26 years. The district judge rejected the suggested deal, holding that Carroll must serve 26 years in prison and then three years on supervised release.

Carroll bases his appeal primarily on two decisions, *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), and *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). *Wampler* is inapposite, and *Earley* misinterprets *Wampler*. In *Wampler* the sentencing court was empowered to order the defendant, who had been convicted of attempted tax evasion, to remain imprisoned until he paid the fine specified in the sentence. The judge, as was his right, declined to order that particular form of punishment. This meant that under the applicable statute the fine would be enforced if necessary by seizing and selling the defendant's property. The clerk of the court, however, added to the written judgment that the defendant was to remain in

prison until the fine was paid. As in this case, the defendant sought federal habeas corpus. The Supreme Court ruled in his favor, in an opinion by Justice Cardozo which states that "a warrant of commitment departing in matter of substance from the judgment back of it is void." 298 U.S. at 465. Hard to quarrel with that ruling—the clerk had no authority to modify the sentence imposed by the judge. As Justice Cardozo pointed out, "the choice of pains and penalties, when choice is committed to the discretion of the court, is part of the judicial function. This being so, it must have expression in the sentence, and the sentence is the judgment." *Id*. at 464. The choice whether to imprison Wampler until he paid the fine had been committed to the sentencing judge and not to the clerk.

In *Earley*, much as in this case, the sentence had omitted to order the defendant to undergo the mandatory period of post-release supervision (New York's term for supervised release). The court, while recognizing that this made the case different from *Wampler* (it quoted the key qualification: "*when* choice is committed to the discretion of the court," 451 F.3d at 75 (our emphasis)) said that *Wampler* had gone on "to articulate a broader holding: The judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment." *Id*. But the addition of supervised release in *Earley* was not "an administrator's amendment." Though recorded by the state's Department of Corrections, it was not the Department's "amendment;" it was a statutory requirement, a form of minimum mandatory sentence—and not *ex post facto* either. And mandatory minimum sentences are not unconstitutional.

It's true, as the court in *Earley* went on to note, that New York law provided a mechanism for correcting an illegal sentence, and the mechanism had not been activated; the Department of Corrections had simply corrected the judgment. In the present case all that we have found by way of a record of the judgment's having been corrected is a notation in Carroll's inmate record on the website of the Illinois Department of Corrections that the date on which his sentence will be discharged has been advanced three years, the result of adding three years of supervised release to Carroll's prison sentence. See *People v. Bethel*, 975 N.E.2d 616, 621 (Ill. App. 2012). Supervised release in Illinois is sometimes referred to as "parole," see *Lucas v. Department of Corrections*, 967 N.E.2d 832, 833 (Ill. App. 2012), thus underscoring the fact that a sentence is not discharged (that is, fully served) until the term of supervised release ends.

There is no suggestion that activating a formal machinery of judgment correction could have resulted in a different outcome. In other words there was no room for the exercise of judicial discretion. Because Illinois's statute made supervised release mandatory, the omission of supervised release from the judgment did not make the sentence unlawful. The Supreme Court of Illinois has held that omission of a required term of supervised release from a sentence is not error, because the state's supervised-release statute provides that "every sentence shall include *as though written therein* a term [of supervised release] in addition to the term of imprisonment. 730 ILCS 5/5–8–1(d)." *People v. McChriston*, 4 N.E.3d 29, 33 (Ill. 2014) (emphasis added). This distinguishes the present case from *Earley*, for the Second Circuit appears to have assumed that the only mechanism authorized by the applicable state law for altering a sentence that had omitted

a statutorily required term of supervised release was to vacate the sentence and conduct a new sentencing hearing. 451 F.3d at 76.

The New York statute was indeed less clear than the Illinois statute regarding the mandatory character of post-release supervision, see N.Y. Penal Law § 70.45(1), and although interpreted by the intermediate New York courts to make such supervision mandatory, see, e.g., *People v. White*, 744 N.Y.S. 2d 924 (2002), was held shortly after the *Earley* decision not to dispense with the requirement that such supervision could be ordered only in the sentence. *Garner v. New York State Dept. of Correctional Services*, 889 N.E.2d 467, 469 (N.Y. 2008) ("the sentencing judge—and only the sentencing judge—is authorized to pronounce the PRS component of a defendant's sentence"). Carroll's sentence, unlike Earley's, was not arguably erroneous. By operation of the Illinois statutory provision that we just quoted, his sentence included the requirement of supervised release even though the judge had not recited it in court or entered it in the judgment. The Second Circuit in *Earley* was unwilling to interpret the New York statute similarly.

And does any of this matter? Suppose the Supreme Court of Illinois in *People v. McChriston* was wrong, and the Illinois statute, or some other source of Illinois law, invalidates any part of a sentence not intoned by the sentencing judge in open court. That would be an error of state law, which a federal court would have no authority to question. But now suppose that regardless of state law the due process clause of the Fourteenth Amendment requires the full sentence to be stated in open court, or in the judgment, or in both (a step beyond *Earley*, which held that under New York law the sen-

tence was what the judge said it was and could be altered only by a resentencing, unlike the law of Illinois). Then there would be an error. Carroll in fact argues that correcting his sentence infringed on a "liberty interest" of his that the due process clause of the Fourteenth Amendment protects against correction other than by a resentencing. But one might as well argue that mandatory minimum sentences are unconstitutional because they usurp the sentencing judge's sentencing authority *pro tanto*. That argument would not fly.

If contrary to what we have been saying there was an error in Carroll's sentence, obviously it was harmless. But suppose, as he intimates, that it's one of those errors to which the harmless-error rule does not apply; for he says that "a writ of habeas corpus *must* be issued when the government imposes a sentence that is greater than the sentence imposed by the sentencing court's judgment" (emphasis added)). There would still be no basis for altering his sentence. There is an important difference between harmless error and corrected error, a difference discussed in our recent opinion in *United States v. Lee*, No. 13–1976, 2014 WL 3715074, at *3 (7th Cir. July 29, 2014), which draws in turn on the Supreme Court's decision in *Waller v. Georgia*, 467 U.S. 39, 50 (1984). A harmless error is a real error, just a real error believed not to have affected the judgment. A corrected error is a real error, but an error that having been corrected enables a definitive and not merely conjectural conclusion that it had not affected the judgment. In *Lee* the error was denying a criminal defendant's constitutional right to represent himself at a pretrial suppression hearing. The error probably was harmless, but the denial of the right of self-representation cannot be forgiven on the ground that it is harmless—it is one of those errors to which the harmless-

error rule does not apply, in part because the denial of certain fundamental procedural rights is difficult to assess for harmlessness. But we said that the error in *Lee*, though it could not be wished away as harmless, could be corrected by the district court's redoing the suppression hearing, this time with the defendant allowed to represent himself. There was no reason as yet to nullify his conviction, as the new hearing might result in the same outcome as the old—a denial of his motion to suppress—and then it would be clear that the error of denying him the right to represent himself had not affected his trial and that his conviction should therefore stand.

It is the same in this case except that the alleged error has already been corrected, which dispenses with any need for a remand as in *Lee*. The error (if it was an error, rather than merely a departure from a customary but not a mandatory procedure) was to omit supervised release from the sentence. It was corrected by adding three years to Carroll's predicted discharge date, since as noted earlier his sentence will not be discharged until he has completed his supervised release. If we ordered the Illinois court to resentence him, the new sentence would be identical to the old one except that it would list the statutory conditions (which are mandatory) and duration (also mandatory) of supervised release. He would have gained nothing from a reversal by this court.

We can *imagine* an argument that due process encompasses procedures the violation of which has no tangible consequences. But the argument would founder on the fact that the due process clause does not guaranty due process; it forbids government to deprive a person of life, liberty, or property without due process. The failure to mention super-

vised release in Carroll's sentence did not deprive him of life, liberty, or property. And Carroll isn't interested in purely symbolic victories. Remember that he wanted his sentence changed to 23 years in prison followed by three years of supervised release, thus swapping three years of prison for an equivalent term of supervised release, a trade obviously advantageous to a prisoner. He has no constitutional right to such a trade just because the judge left something out of the sentence that doesn't have to be in it in order to authorize the full measure of punishment that Carroll has been ordered to undergo.

AFFIRMED.